**NASHVILLE LODGING CO.,
et al., Plaintiffs,**

v.

**RESOLUTION TRUST CORPORATION,
et al., Defendants.**

**Civ. A. No. 92–1615 SSH.**

United States District Court,
District of Columbia.

Dec. 30, 1993.

Charles E. Raley, Timothy E. Heffernan, Israel & Raley, Washington, DC, for plaintiffs.

Barbara E. Nicastro, Bethel & Nicastro, Washington, DC, for defendants.

Howard B. Possick, Sharon M. Schroer, Arent, Fox, Kintner, Plotkin & Kahn, Washington, DC, for Southeast Real Estate/Jer Southeast Services/J.E. Robert Co., Inc.

## OPINION

STANLEY S. HARRIS, District Judge.

Before the Court are the summary judgment motions of plaintiffs, defendant Resolution Trust Corporation ("RTC/Receiver") as receiver for Savers Savings Association ("Savers Savings"), and defendants Southeast Real Estate Operating Company, L.P. ("SREOC"), JER Southeast Services, Inc., and J.E. Robert Company, Inc. (collectively "the Southeast defendants"), and the oppositions and replies thereto. Plaintiffs claim damages against RTC/Receiver for repudiation of a refinancing agreement between plaintiffs and Savers Savings. Plaintiffs also seek a determination that they are entitled to equitable set-off or recoupment of the

amount of payments made to Savers Savings under the now-repudiated refinancing agreement against amounts they owe under a note and mortgage held by SREOC. Upon consideration of the entire record, the Court grants the summary judgment motions of RTC/Receiver and the Southeast defendants, and denies plaintiffs' motion for summary judgment. Although "[f]indings of fact and conclusions of law are unnecessary on decisions of motions under Rule 12 or 56," Fed. R.Civ.P. 52(a), the Court nonetheless sets forth its analysis.

## Background

On June 14, 1983, Savers Federal Savings and Loan Association ("Savers Federal"), the predecessor in interest to Savers Savings, made a $9.5 million loan to Nashville Residence Corporation ("NRC (1983)") for the development of what is now called the Brock Residence Inn. As part of the same transaction, on April 6, 1983, Savers Federal and NRC (1983) executed a refinancing agreement. Under this agreement, Savers Federal agreed to refinance the loan at maturity in 1998, in return, *inter alia*, for the payment by NRC (1983) of monthly refinancing fees, which were to be paid along with the regular payment of principal and interest due under the loan. Ultimately, NRC (1983) transferred the property to Nashville Lodging Company ("NLC"). NLC was substituted as a borrower of the loan in 1989. NLC, and its predecessors, made payments under the refinancing agreement until October, 1991.

Prior to February 10, 1989, Savers Federal was a federally chartered savings association, the accounts of which were insured by the Federal Savings and Loan Insurance Corporation ("FSLIC"). By Resolution Nos. 89–173–p and 89–176–p, the Federal Home Loan Bank Board appointed FSLIC as Conservator for Savers Federal, and upon the enactment of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA"), on August 9, 1989, RTC succeeded FSLIC as Conservator for Savers Federal.

On October 4, 1989, by Order No. 89–263, the Office of Thrift Supervision ("OTS") replaced RTC as Conservator with RTC as Receiver for Savers Federal. The same day, by Order No. 89–264, OTS formed Savers Savings. By Order No. 89–265, OTS appointed RTC as Conservator for Savers Savings. Subsequently, RTC as Receiver for Savers Federal sold and transferred certain assets to Savers Savings, including the loan and refinancing agreement. On September 20, 1991, OTS replaced RTC as Conservator for Savers Savings with RTC as Receiver for Savers Savings.

By letter dated December 19, 1991, RTC/Receiver repudiated the refinancing agreement pursuant to 12 U.S.C. § 1821(e)(1). On February 12, 1992, NLC submitted a claim for damages to RTC/Receiver pursuant to 12 U.S.C. § 1821(d)(3). NLC sought return of all amounts paid under the refinancing agreement, plus prejudgment interest. RTC/Receiver denied NLC's claim on May 12, 1992.

By a purchase agreement dated February 28, 1992, SREOC purchased the loan from RTC/Receiver as part of a pool of mortgage loans. On March 30, 1992, NLC notified SREOC that it had submitted a claim based on RTC/Receiver's repudiation of the refinancing agreement. The purchase of the pool of assets closed on April 29, 1992.

On July 10, 1992, NLC, along with Nashville Residence Corporation (1986) and Nelson (collectively "plaintiffs"), filed suit in this court against RTC/Receiver, and the Southeast defendants. Pursuant to 12 U.S.C. 1821(e)(3), plaintiffs seek direct compensatory damages, which they define as all amounts paid under the refinancing agreement, plus prejudgment interest, from RTC/Receiver due to the repudiation of the refinancing agreement. Plaintiffs also seek a declaratory judgment for equitable set-off or recoupment against the Southeast defendants for amounts paid under the refinancing agreement, plus prejudgment interest.

## Discussion

A court may grant summary judgment when the pleadings and supplemental materials present no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celo-*

*tex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Because the issues raised by the present motions concern only questions of law, this matter is ripe for resolution on summary judgment.

 FIRREA confers extremely broad powers upon receivers and conservators of failed depository institutions. *Gross v. Bell Sav. Bank,* 974 F.2d 403, 407 (3d Cir.1992). This power includes the authority to repudiate any contract that the receiver "determines to be burdensome," when such repudiation "will promote the orderly administration of the institution's affairs." 12 U.S.C. § 1821(e)(1). By repudiating a contract, the receiver is freed from any duty of compliance. *Howell v. FDIC,* 986 F.2d 569 (1st Cir.1993). Although the receiver is liable for damages from repudiation, such liability is limited to "actual, direct compensatory damages." 12 U.S.C. § 1821(e)(3)(A). The statute specifies that such damages do not include "(i) punitive or exemplary damages; (ii) damages for lost profits or opportunity; or (iii) damages for pain and suffering." 12 U.S.C. § 1821(e)(3)(B). Here, there is no dispute as to whether RTC/Receiver's actions in repudiating the refinancing agreement were lawful. Rather, the parties disagree as to whether plaintiffs are entitled to any compensatory or equitable relief as a·result of the repudiation. Plaintiffs seek damages from the RTC/Receiver as well as set-off or recoupment against amounts currently owed to the Southeast defendants. The Court concludes that plaintiffs are entitled to neither.

The Court finds that plaintiffs were in default under the refinancing agreement prior to RTC/Receiver's repudiation. Under the refinancing agreement, plaintiffs were obligated to make monthly refinancing payments so long as the loan remained unpaid. Pls.Ex. X at ¶ 11. Savers Savings was not obligated to refinance the loan if plaintiffs were in default. *Id.* at ¶ 8. RTC/Receiver repudiated the refinancing agreement on December 19, 1991. Plaintiffs failed to make their required monthly payments under the refinancing agreement for November and December, 1991. Therefore, plaintiffs were in default and RTC/Receiver had no obligation to refinance. *See, e.g., McClain v. Kimbrough Constr. Co.,* 806 S.W.2d 194, 199 (Tenn.App.1990) (citing *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.,* 715 S.W.2d 41, 47 (Tenn.1986)) (holding that a party who has materially breached a contract is not entitled to damages from the other party's later, material breach of the same contract).[1]

 Plaintiffs contend, however, that they were not in default under the refinancing agreement because, they argue, the RTC/Receiver's repudiation relates back to before the date of the commencement of the receivership. To support this argument, plaintiffs look to the Bankruptcy Code, which provides that rejection of an executory contract is deemed a breach of the contract immediately before the date of the filing. *See* 11 U.S.C. § 365(g).[2] Thus, they contend that RTC/Receiver's "breach" occurred first. The Court finds no support in FIRREA for plaintiffs' suggestion that the relation back provision of the Bankruptcy Code should be applied here. Although Congress did utilize § 365 of the Bankruptcy Code as a guide in drafting § 1821(e), *Fresca v. FDIC,* 818 F.Supp. 664, 668–69 n. 2 (S.D.N.Y.1993), it did not specifically include the relation back provision of § 365(g). *Cf.* 12 U.S.C. § 1821(e)(3)(A)(ii) (actual direct compensatory damages determined as of "(a) the date of the appointment of the conservatory or receiver; or (b) in the case of [certain qualified financial contracts], the date of the disaffirmance or repudiation

---

1. The parties agree that Tennessee law governs the interpretation of the refinancing agreement.

2. Plaintiffs also contend that another court of this District has held that the date of RTC/Receiver's repudiation of a contract relates back to the date of the receiver's appointment. *See Office & Professional Employees Int'l Union, Local 2 v. FDIC,* 813 F.Supp. 39, 43 (D.D.C.1993) (stating that "repudiation of a contract within a reason-

able time of the appointment of the receiver 'relates back' to the appointment of the receiver"). In that case, the court was interpreting FIRREA's provision concerning the relation back of the date for the determination of damages. *See* 12 U.S.C. § 1821(e)(3)(A)(ii); *Local 2,* 813 F.Supp. at 43–44. The relation back of the damage determination is distinct from the relation back of the date of repudiation itself.

of such contract or agreement"). The Court declines, in effect, to rewrite FIRREA in the manner plaintiffs suggest.[3]

Plaintiffs also argue that once they had notice of the insolvency of Savers Savings, they had a right to suspend payment of the refinancing fees until RTC/Receiver decided whether or not to repudiate the refinancing agreement. *See* Restatement of Contracts § 252. FIRREA contains no provision authorizing such suspension of performance, and the Court finds that suspension would conflict with RTC/Receiver's broad statutory powers. Therefore, the Court finds that plaintiffs were not entitled to suspend performance pending RTC/Receiver's repudiation decision. Accordingly, the Court finds that plaintiffs were in default under the refinancing agreement, and that defendants are entitled to summary judgment on this basis alone.

Alternatively, summary judgment must be granted for RTC/Receiver because plaintiffs' rights under the refinancing agreement were not vested before the appointment of RTC/Receiver. Under FIRREA, a claimant has not suffered any "actual direct compensatory damages" unless its rights were fixed and unconditional at the time the receiver was appointed. *See, e.g., Otte v. FDIC*, No. 92–1194, slip op. at 4 (5th Cir. April 1, 1993); *Citibank (South Dakota) v. FDIC*, 827 F.Supp. 789, 791 (D.D.C.1993); *Local 2*, 813 F.Supp. at 45. "A recoverable claim must represent an amount due and owing at the time of the declaration of insolvency...." *Citibank*, 827 F.Supp. at 791. Thus, in order for plaintiffs to recover damages, they must have had an unqualified right to expect performance of the refinancing agreement on the date that RTC/Receiver was appointed. *See Id.*. Here, however, plaintiffs concede that at the time RTC/Receiver was appointed as receiver for Savers Savings, they had performed only part of their obligations under the refinancing agree-

ment. At that time, Savers Savings had no refinance obligation. Thus plaintiffs' rights under the refinancing agreement had not vested on the date of appointment. Therefore, plaintiffs had suffered no actual, direct compensatory damages as of that date. Accordingly, RTC/Receiver is not liable to plaintiffs for damages, and summary judgment for RTC/Receiver must be granted on this basis.

The Court also finds that irrespective of plaintiffs' breach, plaintiffs have no right of set-off or recoupment against amounts currently owed under the loan to SREOC. The purchaser of an asset from a failed institution is not liable for the conduct of the receiver or institution unless the liability is transferred and assumed. *See, e.g., First Ind. Fed. Sav. Bank v. FDIC*, 964 F.2d 503, 508 (5th Cir.1992); *Trigo v. FDIC*, 847 F.2d 1499 (11th Cir.1988); *In re F & T Contractors, Inc.*, 718 F.2d 171 (6th Cir. 1983); *Santopadre v. Pelican Homestead & Sav. Ass'n*, 741 F.Supp. 1252, 1253–54 (E.D.La.1990), *aff'd*, 937 F.2d 268 (5th Cir. 1991). RTC/Receiver has the power to sell an asset while retaining a related liability. *See, e.g., Pageland 29 Ltd. Partnership v. FDIC*, CA No. 91–858, 1992 WL 391377, 1992 U.S.Dist. LEXIS 19231 (D.D.C. Dec. 14, 1992). The Court finds that SREOC did not assume liability for repudiation of the refinancing agreement when it purchased the pool of assets. *See, e.g., FSLIC v. Mackie*, 962 F.2d 1144, 1150 (5th Cir.1992) (citing *Trigo v. FDIC*, 847 F.2d 1499, 1503 (11th Cir.1992)) (finding no assumption of liability when defendant purchased only assets); *Payne v. Security Sav. & Loan Ass'n*, 924 F.2d 109, 111 (7th Cir.1991) (stating no liability absent express transfer). Accordingly, summary judgment for the Southeast defendants also must be granted on this basis.[4]

### Conclusion

For the foregoing reasons, the Court grants the motions for summary judgment of

---

3. Moreover, plaintiffs' argument would lead to perverse results. Under plaintiffs' scheme, because repudiation would in effect excuse a prior breach, the breaching party would be placed in a better position if the receiver repudiates the contract than if the contract is affirmed.

4. Thus the Court need not determine whether the holding in *Scott v. Armstrong*, 146 U.S. 499, 13 S.Ct. 148, 36 L.Ed. 1059 (1892), which allowed equitable set-off under pre-FIRREA banking law, remains valid after the passage of FIRREA.

RTC/Receiver and the Southeast defendants. The Court denies plaintiffs' motion for summary judgment.