**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 93-2689

---

DON M. KENNEDY, ET AL.,

Plaintiffs,

DON M. KENNEDY and
J.F.F., LTD.,

Plaintiffs-Appellants,

versus

MAINLAND SAVINGS ASSOCIATION,
ET AL.,

Defendants,

SOUTHWEST FEDERAL SAVINGS
ASSOCIATION,

Defendant-Appellee.

---

Appeal from the United States District Court
For the Southern District of Texas

(December 21, 1994)

Before REAVLEY, DAVIS and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Appellants J.F.F., Ltd. ("JFF") and Don M. Kennedy ("Kennedy") are appealing a judgment entered against them on a promissory note executed by JFF and guaranteed by Kennedy. The note and guaranty -- originally associated with a 1985 agreement to develop and build an apartment complex in Houston -- were transferred several times due to savings & loan failures; they now are held by appellee, the Resolution Trust Corporation as receiver for Southwest Federal

Savings Association ("RTC/Southwest Federal"). The district court below entered summary judgment in favor of appellee RTC/Southwest Federal on the note and guaranty on October 23, 1991.[1] JFF and Kennedy appeal, and we AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

The following chronology describes the long and convoluted history of this case:

! Prior to June 1985: JFF, Kennedy, Lamar Savings Association ("Lamar")[2] and Mainland Savings Association ("Mainland") jointly agree to develop and build an apartment complex on a tract of land in Houston. JFF, a Texas limited partnership, was to own the land and ultimately the apartment complex. JFF purchases the raw land from Mainland, with Mainland making a first lien acquisition loan of $1,064,500 to JFF.

! June 5, 1985: Lamar, Mainland, JFF and Kennedy execute a two-page agreement ("the letter agreement"), which provided in full:

> "This letter shall evidence our mutual understanding in regard to the following matters:
>
> "I. [Mainland] has, as of this date, made a $1,064,500.00 loan to [JFF] secured by various liens against certain real property located in Harris County, Texas ...

---

[1]As the chronology below shows, the district court granted JFF and Kennedy's motion for new trial on April 21, 1992 and requested further briefing from the parties. On January 22, 1993, the court issued a memorandum concluding that its October 23, 1991 summary judgment against JFF and Kennedy should be reinstated. The court issued an order reinstating the October 23, 1991 judgment as of January 22, 1993.

[2]As will be detailed below, Lamar is the predecessor to appellee RTC/Southwest Federal. Lamar was the original lender and payee on the note and guaranty that are the subjects of this appeal.

"II. [Lamar] has of this date made a $1,200,000.00 loan to JFF secured by a subordinate lien against the property and additionally secured by a Guaranty Agreement executed by [Kennedy].

"III. Lamar has agreed to lend to JFF within the next twelve months those sums Lamar deems necessary and appropriate to construct an apartment project on the Property, subject to the following conditions:

"a.  Lamar shall determine the size of the Project based on its long range economic viability as determined in an acceptable appraisal of the proposed Project, which appraisal shall be paid for by J.F.F.

"b.  The proposed Project and Loan must meet Lamar's normal and customary underwriting standards and practices and comply with all regulations applicable to Lamar, J.F.F. and the Project.

"c.  A portion of the Loan proceeds shall be used to discharge in full the Original Mainland Loan and the Original Lamar Loan as well as discharge all obligations contained in any instruments securing said loans.

"d.  The completion of construction of the proposed Project shall be personally guaranteed by Kennedy.

"e.  J.F.F. and Kennedy shall execute such instruments as Lamar deems necessary to properly and adequately document, evidence and secure the new Loan.

"IV.  Mainland has agreed in the event the Loan contemplated in paragraph III above is made by Lamar to J.F.F., Mainland will purchase such Loan from Lamar for an amount equal to the outstanding indebtedness upon the earlier of (i) substantial completion of the proposed Project; or (ii) an Event of Default under any of the instruments evidencing and/or securing the subject Loan."

Thus, on June 5, 1985, Lamar provided JFF and Kennedy with an interim loan of $1,200,000, creating the debt that forms the basis of this appeal. JFF signed the promissory note for "$1,200,000 or so much hereof as may be advanced." Kennedy signed the note as a payment guarantor and also contemporaneously executed a separate, six-page guaranty agreement.

3

! <u>June-December 1985</u>: The financing for the development scheme started unraveling early on. It appears that Mainland's financial difficulties caused Mainland to back out of its commitment to purchase the construction loan that was to be provided by Lamar to JFF. That in turn led Lamar to refuse to go forward with its commitment to provide the construction loan to JFF.

! <u>January 9, 1986</u>: Lamar notifies Kennedy and JFF that the note is in default and gives notice of acceleration.

! <u>January 27, 1986</u>: JFF and Kennedy sue Lamar and Mainland in Texas state court, seeking monetary damages and alleging breach of contract, fraud, failure of condition precedent, failure of consideration and breach of fiduciary duty. JFF and Kennedy also seek to rescind the entire transaction, including the note and guaranty, and a declaratory judgment determining the rights of the parties. (These claims will hereinafter be referred to collectively as "the breach of contract claims").

! <u>March 7, 1986</u>: Lamar answers and asserts (1) a counterclaim against JFF and Kennedy to collect on the note and guaranty, and (2) a cross-claim against Mainland for breach of contract.

! <u>April 4, 1986</u>: Mainland is declared insolvent and the FSLIC is appointed as receiver.

! <u>May 1, 1986</u>: The FSLIC as receiver for Mainland intervenes and removes the case to federal court.

! <u>September 11, 1986</u>: The federal district court (2) dismisses JFF and Kennedy's claims against Mainland, (2) dismisses Lamar's cross-claim against Mainland, and (3) remands the part of the case not

4

relating to Mainland (including JFF and Kennedy's breach of contract claims against Lamar and Lamar's claim against JFF and Kennedy on the note and guaranty) back to state court.[3]

! May 18, 1988: Lamar is declared insolvent and placed into receivership with the FSLIC as receiver. Simultaneously with the receivership, the FSLIC (as receiver for Lamar) enters into an acquisition agreement with the "acquiring association," Southwest Savings Association ("Old Southwest"). Pursuant to the acquisition agreement, Old Southwest purchases "all of [Lamar]'s assets that the Receiver owns or holds and any of [Lamar]'s assets hereafter acquired by the receiver." Thus, Lamar's claim on the note and guaranty against JFF and Kennedy are transferred to Old Southwest. But Old Southwest does not assume liability for any general unsecured claims against Lamar,[4] such as JFF and Kennedy's breach of contract claims connected with the 1985 letter agreement. After the split of Lamar's assets and liabilities, such unsecured claims may be asserted only against the FSLIC as receiver for Lamar.

! June 13, 1988: The FSLIC as receiver for Lamar intervenes as a defendant and once again removes the case to federal court. According to the FSLIC's petition in intervention:

---

[3]The dismissals of JFF and Kennedy's claims against Mainland and Lamar's cross-claim against Mainland were not appealed and are now final.

[4]According to the acquisition agreement, the only liabilities of Lamar that Old Southwest agreed to assume were Lamar's "liabilities to Depositors with respect to their Deposits," and the secured liabilities of Lamar, "to the extent of the value of the security."

5

> "[FSLIC] is now the receiver of [Lamar] and, pursuant to an acquisition agreement ... [Old Southwest] is now the owner of the loan in issue and any related security and collateral interests. Pursuant to the terms of the acquisition agreement, no related liabilities or potential liabilities of [Lamar] were transferred to [Old Southwest]. As a result, [the FSLIC] is now the proper party-defendant with respect to the claims, demands and causes of action pertaining to the loan transaction which have been asserted by [Kennedy and JFF] against Lamar."

! May 11, 1989: The district court re-aligns the parties: Old Southwest is joined as plaintiff. JFF & Kennedy are defendants and third-party plaintiffs. The FSLIC (as receiver for Lamar) is a third-party defendant.

! August 9, 1989: FIRREA is enacted, abolishing FSLIC; all liabilities against the FSLIC (including JFF and Kennedy's breach of contract claims against Lamar) become liabilities of the FSLIC Resolution Fund, which is managed by the FDIC.

! November 14, 1989: JFF and Kennedy enter into a stipulation of dismissal of the breach of contract claims by JFF and Kennedy against the government successor to Lamar (FSLIC Resolution Fund, managed by the FDIC).

! November 21, 1989: The federal district court enters an "Order of Dismissal" in connection with the FDIC's settlement with JFF and Kennedy. The order states that "this cause ... is dismissed on the merits without prejudice to the right of counsel of record to move for reinstatement ...[if] final approval of the settlement [can] not be obtained."[5]

---

[5]JFF and Kennedy take the position that the broad language of this order inadvertently dismissed the entire case. We hold that it did not. As all parties concede, this dismissal was to effectuate the settlement of JFF and Kennedy's claims against the FSLIC/FDIC.

! June 15, 1990: Old Southwest is placed into receivership with the RTC as receiver. Simultaneously with the receivership, the RTC (as receiver for Old Southwest) enters into an purchase and assumption agreement with a new "acquiring association," Southwest Federal Savings Association ("Southwest Federal"). The purchase and assumption agreement splits Old Southwest's assets and liabilities, with most of the assets being transferred to Southwest Federal and most liabilities remaining with the RTC as receiver for Old Southwest. Thus, the note signed by JFF and guaranteed by Kennedy is transferred to Southwest Federal.

! November 8, 1990: Southwest Federal, "a transferee of assets from the [RTC as receiver for Old Southwest]" moves the district court to substitute Southwest Federal as plaintiff only in the place of Old Southwest. "Southwest Federal is now the owner and holder of all interests of Lamar and Old Southwest in the loan and guaranty, as well as all claims which Lamar and Old Southwest had against the defendants [JFF and Kennedy]."

! July 1991: Southwest Federal is declared insolvent and the RTC is appointed as receiver. The appellee, RTC as receiver for Southwest Federal, thus acquires all the assets that Southwest Federal had (including the note signed by JFF, guaranteed by Kennedy and originally held by the now-defunct Lamar).

! July 12, 1991: The district court issues a memorandum granting

---

The intent by the district court to dismiss only these claims is evident in the record; the order was entered one week after the stipulation was filed, and the order states that "an amicable settlement has been reached."

7

RTC/Southwest Federal's motion for summary judgment on the note and guaranty against JFF and Kennedy. Also on July 12, 1991, the district court denies JFF and Kennedy's motion to dismiss for lack of subject matter jurisdiction in connection with the November 21, 1989 order.

! October 23, 1991: The district court enters judgment in favor of RTC/Southwest Federal against JFF and Kennedy for all amounts due under the note and guaranty.

! April 21, 1992: The district court grants a new trial to Kennedy and JFF, thus vacating the summary judgment granted on July 12, 1991 and entered on October 23, 1991. The court orders parties to brief two issues:

(1) whether (a) FDIC v. Laquarta, 939 F.2d 1231, 1239 (5th Cir. 1991); (b) the D'Oench, Duhme doctrine[6] or (c) the holder in due course doctrine may be applied where "there exists a written agreement contained in the files of the institution that would tend to reduce or offset the amount due under a variable interest note, and where the note makes no reference to that agreement; and

(2) whether Southwest Federal Savings Association assumed any liability under the 1985 letter agreement, "if it is indeed a liability," when it purchased the assets originally held by Lamar Savings Association, "and if it did not, what are the ramifications of the FDIC's previous dismissal?"

---

[6]See D'Oench, Duhme & Co. v. FDIC, 315 U.S. 447 (1942); 12 U.S.C. § 1823.

8

! January 22, 1993: The district court issues a second memorandum, concluding that the July 12, 1991 summary judgment should be reinstated, and enters an order reinstating the October 23, 1991 judgment effective as of January 22, 1993.

! August 11, 1993: The district court denies JFF and Kennedy's motion for new trial.

! September 7, 1993: JFF and Kennedy file notice of appeal to this Court.

## DISCUSSION

In support of its motion for summary judgment, appellee RTC/Southwest Federal established that appellant JFF executed and delivered an unconditional promissory note to Lamar in the amount of $1.2 million on June 5, 1985. To secure payment of the note, appellant Kennedy gave Lamar an unconditional guaranty of all amounts due under the note. JFF failed to make the payments required under the terms of the note, and Kennedy defaulted on the guaranty. RTC/Southwest Federal is and was the owner and holder of the note and guaranty, which it acquired pursuant to a purchase and assumption agreement dated June 15, 1990. At the time of appellee's motion for summary judgment, there remained due under the note the principal sum of $1.2 million, plus accrued, unpaid interest, attorney's fees and costs. These facts are undisputed, and they establish RTC/Southwest Federal's right to judgment as a matter of law.[7]

---

[7]Our disposition of this appeal makes it unnecessary for us to consider whether either the D'Oench, Duhme doctrine or the federal holder in due course doctrine applies to this case. We therefore do

9

Appellants JFF and Kennedy argue that they can assert the 1985 letter agreement as a defense to excuse their nonperformance under the note and guaranty. They claim that their nonpayment on the note was excused as a matter of law by Lamar's prior breach of the letter agreement, in which Lamar promised to make a construction loan to JFF. The letter agreement recited that part of the construction loan was to be used to discharge the $1,200,000 interim loan that Lamar made to JFF "as well as discharge all obligations contained in any instruments securing said loans." Because Lamar failed to make the construction loan, appellants argue, they are excused from failing to repay the interim loan debt evidenced by the note.

We find no merit in appellants' arguments. The language of the 1985 letter agreement provides no basis for using Lamar's liability (on its separate but related obligation to provide the construction financing) as an offset to JFF and Kennedy's obligations. The letter agreement simply does not make payment of JFF's note, or performance on Kennedy's guaranty, contingent on the funding of an additional loan. In addition, the note and guaranty contain unconditional language and do not refer to the letter agreement. The statement in the letter agreement that the proceeds of any future loan would be used to discharge the note was merely a recitation for Lamar's benefit and protection, meaning that the

_____

not decide whether either doctrine would bar JFF and Kennedy from asserting a valid defense to nonperformance under the note and guaranty, because we hold that JFF and Kennedy cannot establish such a valid defense.

10

loan proceeds were not to be expended for the borrower's own purpose; it does not make liability on the note and guaranty conditional. JFF and Kennedy can point to no explicit written language in the 1985 letter agreement by which Lamar agreed that if it did not provide the construction loan, JFF and Kennedy were excused from their obligations under the note and guaranty. Thus, JFF and Kennedy's attempted defense fails. Whatever liabilities Lamar had on the letter agreement ultimately ended up as liabilities of the FSLIC that were dismissed on November 21, 1989. Appellee RTC/Southwest Federal acquired the note and guaranty free of any such liability. "The purchaser of an asset from a failed institution is not liable for the conduct of the receiver or [failed] institution unless the liability is transferred and assumed." Nashville Lodging, Inc. v. RTC, 839 F. Supp. 58, 62 (D. D.C. 1993)(citing First Ind. Fed. Sav. Bank v. FDIC, 964 F.2d 503, 508 (5th Cir. 1992); Trigo v. FDIC, 847 F.2d 1499 (11th Cir. 1988)). The federal receiver such as the FSLIC or RTC has the power to sell an asset such as JFF's note while retaining a related liability, and no liability is transferred to an assuming institution such as Old Southwest absent an express transfer. Nashville Lodging, 839 F.Supp. at 62. In such a case, the debtor has "no right of set-off or recoupment against amounts currently owed under the loan" transferred.[8] Id; see also Texas Refrigeration

---

[8]We agree that JFF and Kennedy at one point may have possessed affirmative breach of contract damage claims against Lamar in connection with Lamar's failure to provide the promised construction financing. Such claims, if found to be valid, might have operated as a set-off that would have reduced appellants'

11

<u>Supply v. FDIC</u>, 953 F.2d 975, 984 (5th Cir. 1992)(holding that FDIC's role in assuming some of failed institution's liabilities rather than passing them on to bridge bank "is not prohibited, and, indeed, even seems to have the Supreme Court's blessing.")(citing <u>Coit Ind. Joint Venture v. FSLIC</u>, 489 U.S. 561 (1989)). Therefore, we AFFIRM the summary judgment granted below in favor of RTC/Southwest Federal for all amounts due under the note and guaranty.

---

liability on the note and guaranty. However, any such "set-off" breach of contract claims were separated from the note and guaranty on May 18, 1988 when Lamar went into receivership and Lamar's assets and liabilities were split. After May, 18, 1988, JFF and Kennedy could pursue their breach of contract claims only against the FSLIC (later the FDIC), because Old Southwest did not assume such liabilities when it purchased Lamar's assets.

Those breach of contract claims against the FDIC were voluntarily dismissed on November 21, 1989 as the result of a settlement between the defendant FDIC and the plaintiffs JFF and Kennedy.