*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0140p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

BESSIE JONES, Administratrix of the Estate of
Nathaniel Jeffrey Jones, Deceased, et al.,
*Plaintiffs-Appellees,*

      *v.*

CITY OF CINCINNATI, et al.,
*Defendants-Appellants.*

No. 06-4528

---

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 04-00616—Susan J. Dlott, District Judge.

Argued: February 5, 2008

Decided and Filed: April 4, 2008

Before: MARTIN and SUTTON, Circuit Judges; OBERDORFER, District Judge.[*]

---

### COUNSEL

---

**ARGUED:** Richard Ganulin, CITY SOLICITOR'S OFFICE FOR THE CITY OF CINCINNATI, Cincinnati, Ohio, for Appellants. Eric C. Deters, ERIC C. DETERS & ASSOCIATES, P.S.C., Independence, Kentucky, for Appellees. **ON BRIEF:** Richard Ganulin, CITY SOLICITOR'S OFFICE FOR THE CITY OF CINCINNATI, Cincinnati, Ohio, for Appellants. Eric C. Deters, ERIC C. DETERS & ASSOCIATES, P.S.C., Independence, Kentucky, for Appellees.

---

### OPINION

---

OBERDORFER, District Judge. Defendants appeal the district court's partial denial of their motion to dismiss Fourth and Fourteenth Amendment claims based on 42 U.S.C. § 1983 brought against them by representatives and relatives of Nathaniel Jones, a 350-pound 41-year old African American who died after Cincinnati police officers subdued and placed him under arrest. Because the defendants are not entitled to qualified immunity on the basis of the facts alleged in the complaint, we affirm.

---

[*]The Honorable Louis F. Oberdorfer, Senior United States District Judge for the District of Columbia, sitting by designation.

I.

Because this is an appeal from the denial of a Rule 12(b)(6) motion to dismiss, the following account accepts as true the facts alleged in the complaint – in this case, the second amended complaint. On Sunday, November 30, 2003, during the early morning, Jones was visiting friends at a White Castle restaurant in Cincinnati. He became ill and fell unconscious in the parking lot. A White Castle employee called 911 to summon medical assistance. Several firefighters, who are defendants in this suit but not a subject of this appeal, arrived and refused to treat Jones. Jones woke up and began walking and dancing; he caused no damage to any persons or property. The firefighters summoned the police and described Jones as a nuisance.

Officers James Pike and Baron Osterman arrived in response to the firefighters' summons. Shortly thereafter, the firefighters left the scene. At about, or shortly after, the time of their departure, Pike called dispatch to request a Medical Help Response Team and a supervisor with a taser. Pike and Osterman then approached Jones and tried to subdue him, even though Jones presented no danger to any property or persons. Pike and Osterman began to savagely beat Jones with their batons. Officers Guy Abrams, Joehonny Reese, and Thomas Slade arrived and began using their batons on Jones. The officers struck Jones at least 33 times, giving him no chance to comply with orders to put his hands behind his back. They continued to strike Jones while he was on his hands and knees.

Officers Pike and Slade sprayed chemical irritant in Jones's face while he was prone in handcuffs and while officers Pike, Osterman, Abrams, Reese, Slade, and Jay Johnstone used their combined weight to hold him down. Their weight restricted the movement of Jones's diaphragm and made it difficult for him to breathe. Jones struggled to twist his body under the officers in an attempt to breathe. In response, the officers pressed down on him even harder. Once they had subdued Jones, they left him face down on the ground handcuffed behind his back for a prolonged period of time. During this time, Jones stopped breathing; all the officers knew it. Reese saw Jones changing color. Johnstone, Reese, and Abrams knew that a suspect lying face down risked positional asphyxia (difficulty breathing due to one's posture or position). None of the officers provided mouth-to-mouth resuscitation or other respiratory aid. Instead, they stood there and discussed the absence of fire personnel.

Police Sergeant James Waites arrived while Jones was still lying face down. The sergeant was aware of the risks of positional asphyxia but did not order Jones rolled over or undertake to do so himself. Two other police sergeants, Jeffrey Battison and Leroy Brazile, arrived on the scene. All three sergeants noticed Jones was not breathing. None of the sergeants provided any medical aid and each knew that no other officers were providing aid. Waites did not order officers to perform mouth-to-mouth because he saw that Jones was frothing at the mouth and they had no protective mouth barrier. Instead, Battison summoned emergency medical services. The officers all knew that it was impossible to render proper medical aid while Jones remained in handcuffs. Their failure to remove the handcuffs delayed the administration of aid and hastened Jones's death.

Finally, plaintiffs allege that the City, as well as Chief of Police Thomas Streicher and now former City Manager Valerie Lemmie as policymakers for the City, are responsible for the officers' actions because the policymakers allowed officers to use excessive force against citizens without facing discipline, failed to provide adequate training to the officers or promulgate adequate policies addressing the use of force or the dangers of positional asphyxia, failed to discipline officers whose conduct put individuals at risk of positional asphyxia, and failed to provide officers with equipment – such as mouth barriers for mouth-to-mouth resuscitation – to aid those suffering from positional asphyxia.

Jones' grandmother and administratrix of his estate and Jones' two minor sons filed a complaint in the United States District Court for the Southern District of Ohio against sixteen defendants: the City of Cincinnati, Cincinnati Chief of Police Streicher, Cincinnati Fire Chief Robert Wright, now former City Manager Lemmie, the six police officers present during the struggle with Jones (Abrams, Pike, Reese, Johnstone, Osterman, and Slade), three police sergeants who arrived at the scene after the struggle (Brazile, Waites, and Battison), and three Cincinnati firefighters (Gregory Adams, Tyrone Harrison, and Brian Otten). The complaint alleged that the defendants violated Jones's Fourth Amendment right to be free from excessive force and his Fourteenth Amendment right to adequate medical care while detained by the state. The complaint also contained claims for relief under Ohio law for wrongful death, gross negligence, and loss of consortium.

The defendants moved to dismiss the entire complaint on the grounds that the complaint fails to state a claim, the individual defendants are entitled to qualified immunity on the constitutional claims, and all defendants are entitled to statutory immunity under Ohio law on the state law claims. Defendants appeal the district court's (1) denial of the motion to dismiss the claims against the City, Chief of Police Streicher, City Manager Lemmie, and Officers Abrams, Pike, Reese, Johnstone, Osterman, and Slade for use of excessive force and for failure to provide adequate medical care; and (2) denial of the motion to dismiss the claim against Police Sergeants Waites, Battison, and Brazile for failure to provide adequate medical care.

## II.

We review de novo the district court's ruling on a motion to dismiss a claim. *Association of Cleveland Firefighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007). A claim survives such a motion if its "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atl. Corp. v. Twombly*, --- U.S. ----, 127 S.Ct. 1955, 1959 (2007). "[W]hen a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Id.* at 1970. "[W]e construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "[W]e need not accept as true legal conclusions or unwarranted factual inferences." *Id.*

Police enjoy qualified immunity unless (1) the facts alleged show that the police violated a constitutional right; and (2) the right was clearly established. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). We analyze the plaintiffs' claims for excessive force separately from the claim that defendants failed to provide adequate medical care.

*Excessive Force*. "[C]laims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard." *Graham v. Connor*, 490 U.S. 386, 395 (1989). The complaint alleges that the six officers who subdued Jones (1) savagely beat him with batons, striking him at least 33 times without giving him a chance to comply with their orders; (2) sprayed chemical irritant in his face after they had placed him in handcuffs; and (3) used their combined weight to hold him prone on the ground after he had stopped struggling. Such use of force is not objectively reasonable, and hence a violation of Jones's Fourth Amendment rights. *See Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 901-02 (6th Cir. 2004) (noting that baton strikes "applied after the subduing of a suspect are unreasonable" and holding that lying on top of a suspect such as Jones and spraying chemical irritant in his face when he "had stopped resisting arrest and posed no flight risk" are unreasonable). The right of an unresisting suspect to be free from baton strikes, "significant pressure on [his] back," and a dose of chemical irritants was clearly

established over three years before Jones died. *See id* at 902-03. Therefore, the officers who subdued Jones are not entitled to qualified immunity on the excessive force claim.

*Failure to Provide Medical Care to Detainee.* "[D]eliberate indifference" to the serious medical needs of pretrial detainees normally constitutes a substantive due process violation. *Estate of Owensby v. City of Cincinnati*, 414 F.3d 596, 602 (6th Cir. 2005). "[W]hen unforeseen circumstances demand an officer's instant judgment," a heightened standard of malice and intent to harm applies. *Id.* at 603. The defendants argue that this case should be analyzed under the heightened malice standard because there was little time between taking Jones into custody and the time he stopped breathing. We disagree. The complaint alleges that the officers left Jones on the ground for a prolonged time and that they "stood there and discussed the absence of fire personnel" after they noticed Jones was not breathing. These facts are similar to those in *Owensby*, in which this Court ruled that the deliberate indifference standard was appropriate because the six minutes between taking the suspect into custody and the time medical care was provided gave the officers "time to fully consider the potential consequences of their conduct." *Id.* (internal quotation marks omitted).

"Deliberate indifference requires that the defendants knew of and disregarded a substantial risk of serious harm to [the pretrial detainee's] health and safety." *Id.* (brackets in original, internal quotation marks omitted). The complaint alleges that each of the officers present – the six who subdued Jones and the three sergeants who arrived afterwards – knew that the handcuffed Jones was not breathing. Therefore each knew of a substantial risk of serious harm to Jones's safety while he was in their custody and disregarded that risk by failing to provide aid. The right of a suspect in custody to receive adequate medical care, even if the suspect had been fleeing and resisting before the officers placed him in custody, was clearly established almost three years before Jones's death. *Id.* Therefore, the officers who subdued Jones and the sergeants who arrived soon after are not entitled to qualified immunity on the failure to provide medical care claim.

*Municipality and City Officials.* The City, Chief of Police Streicher, and City Manager Lemmie are likewise not entitled to qualified immunity on the constitutional claims. A municipality is liable for a constitutional violation when execution of the municipality's policy or custom inflicts the alleged injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). The official policy or custom "must be the moving force of the constitutional violation" to establish the liability of a government body. *Polk County v. Dodson*, 454 U.S. 312, 326 (1981). A municipality cannot be held liable under § 1983 absent an underlying constitutional violation by its officers. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). However, where a failure to train is the result of a municipality's policy or custom and results in a constitutional violation by its officers, a city can be held liable under § 1983. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

The only argument the defendants make on appeal concerning liability of the City and its policymakers is that there was no underlying constitutional violation by its officers. This argument fails. We have already rejected defendants' contention that the officers should receive qualified immunity. The complaint alleges that the City's inadequate training regarding both use of force and positional asphyxia associated with such force, tolerance of officers' use of excessive force, and policies regarding use of force and medical care of suspects all, if proven, would violate the Constitution.

### III.

Throughout their briefs, defendants do not directly challenge the proposition that the facts alleged in the complaint state valid constitutional claims. Rather, they state that facts not alleged in the complaint support their claim of qualified immunity. For example, defendants state that Jones attacked Officers Pike and Osterman, that officers did not "savagely beat" Jones but rather prodded

him with batons to create sufficient pain to achieve compliance, and that Jones was only on his stomach for a few seconds before officers rolled him over. Brief of Defendants-Appellants at 5-8. As support for their version of the facts, defendants cite a series of exhibits attached to the complaint. These exhibits include transcripts of interviews by a Cincinnati Citizen Complaint Authority investigator with the officers who subdued Jones (Exs. 1-5, 8) and excerpts from the Citizen Complaint Authority report on the incident (Ex. 6). Unsurprisingly, statements by the officers contain facts which, if true, cast doubt on the allegations in the complaint.

Defendants argue that because a "copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes," Fed. R. Civ. P. 10(c), all the facts stated in the exhibits to the complaint must be assumed to be true for purposes of the motion to dismiss. Even if we assume that a transcript of an interview constitutes a "written instrument," treating a transcript as part of a pleading does not mean that we assume everything the officers said in those interviews is true. Where a plaintiff attaches to the complaint a document containing unilateral statements made by a defendant, where a conflict exists between those statements and the plaintiff's allegations in the complaint, and where the attached document does not itself form the basis for the allegations, Rule 10(c) "does not require a plaintiff to adopt every word within the exhibits as true for purposes of pleading simply because the documents were attached to the complaint to support an alleged fact." *See N. Ind. Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454–56 (7th Cir. 1998). Rather, we treat the exhibit as an allegation that the officers made the statements in the transcripts and we treat that allegation as true. Thus, we accept as true that on June 24, 2004 Officer Pike said that no officer put weight on Jones's back during the handcuffing process. Joint Appendix 177. We do not accept as true, however, that Officer Pike's statement is accurate or true; this is a question of credibility and weight of the evidence that is not before a court considering a motion to dismiss.

## IV.

The court did not abuse its discretion when it disregarded evidence that the defendants filed in support of their motion to dismiss, including public documents and a videotape of the incident. On a motion to dismiss, a court may accept "matters outside the pleadings," but in doing so it generally must treat the motion "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). A court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999). Where the evidence "captures only part of the incident and would provide a distorted view of the events at issue," as the district court concluded with respect to the videotape, we do not require a court to consider that evidence on a 12(b)(6) motion. *See Passa v. City of Columbus*, 123 F. App'x 694, 697 (6th Cir. Feb. 16, 2005) ("[I]n order to preserve a party's right to a fair hearing, a court, on a motion to dismiss, must only take judicial notice of facts which are not subject to reasonable dispute.").

## V.

For these reasons, we affirm the decision of the district court and remand the case for discovery, summary judgment, and, if necessary, a trial to resolve the disputed factual issues.