**In re William D. SHIRK, Vicki L. Shirk, Debtors.**

**William D. Shirk, Vicki L. Shirk, Plaintiffs**

**v.**

**JPMorgan Chase Bank, N.A., Defendant.**

**Bankruptcy No. 09–35487.**
**Adversary No. 09–3346.**

United States Bankruptcy Court, S.D. Ohio, Western Division, at Dayton.

Sept. 30, 2010.

---

Gene E. Schaefer, Combs & Schaefer Law Firm, Middletown, OH, for Plaintiffs.

Justin W. Ristau, Bricker & Eckler LLP, Rachel Ary Mulchaey, Columbus, OH, for Defendant.

Jamie Dimon, New York, NY, pro se.

CT Corporation System, Plantation, FL, pro se.

### Decision Granting JP Morgan Chase Bank, N.A.'s Motion to Dismiss

GUY R. HUMPHREY, Bankruptcy Judge.

## I. Introduction

This matter is before the court on the *Motion of JP Morgan Chase Bank, N.A. as Acquirer of Certain Assets And Liabilities of Washington Mutual Bank From The Federal Deposit Insurance Corporation Acting as Receiver to Dismiss Amended Complaint* (the "Motion") (Adv. Doc. 32) filed in this adversary proceeding initiated by the Debtors, William D. Shirk and Vicki L. Shirk. Based upon WAMU's and its agent's alleged wrongdoing, Mr. and Mrs. Shirk seek alternative relief— either rescission of a mortgage on their personal residence they granted to Washington Mutual Bank ("WAMU"), JP Morgan Chase Bank's ("Chase") predecessor in interest, or a modification of that mortgage. Mr. and Mrs. Shirk also seek redress for certain alleged violations by Chase of asserted obligations under the Troubled Asset Relief Program of the United States ("TARP") and the National Housing Act ("NHA") and ask the court to find WAMU's alleged agent "guilty of common law fraud and misrepresentation of income."

For the reasons set forth below, the court grants the Motion as to all claims set forth in the Amended Complaint (Doc. 26) (the "Complaint").

## II. Statement of Facts, Procedural Background, and Positions of the Parties

### A. Statement of Facts

The facts set forth in this decision are based upon the Complaint and, for purposes of this decision, are accepted as true. *See Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir.2008).

On September 7, 2007 William D. Shirk and Vicki L. Shirk (the "Shirks"), induced by the promise of a lower interest rate from Scott Simpson, a mortgage broker employed by Eagle Mortgage, obtained a loan from WAMU in the original principal amount of $201,175 secured by a mortgage (the "Mortgage") on their residence located at 8742 Compton Road, Waynesville, Ohio (the "Property" and the "Transaction"). This loan paid and replaced an existing mortgage loan on their residence and thus was a "refinancing" transaction. The WAMU loan also included an additional $25,854 to be used to build an outbuilding on the Property. Complaint, ¶¶ 1 & 4.

The Shirks were provided by Eagle Mortgage, an agent of WAMU, with a blank loan application and "everything was done by phone and debtors were informed by Scott Simpson that he had secured a loan commitment." Complaint, ¶ 5. The loan application overstated the Shirks' income. *Id.* The Shirks were not apprised of certain costs and fees and until the closing of the Transaction, "did not receive two copies of the notice to rescind," and did not obtain a lower interest rate, which was to be arranged with WAMU "at a later date." Complaint, ¶ ¶ 9, 10 & 11.

On September 25, 2008 the United States Office of Thrift Supervision closed WAMU and appointed the Federal Insurance Deposit Corporation ("FDIC") as receiver for WAMU.[1] On that same day, the FDIC and Chase executed a Purchase and Assumption Agreement pursuant to which Chase acquired certain assets and assumed certain liabilities of WAMU, including the Shirks' loan. *See* Motion to Dismiss, Exhibits A & B.

### B. *Procedural Background*

On September 1, 2009 the Shirks filed a voluntary petition for relief under Chapter 13 of Title 11 of the United States Code[2] and listed WAMU on Schedule D (Creditors Holding Secured Claims) as the holder of the Mortgage on the Property. Also on September 1, 2009 the Shirks filed their Chapter 13 plan in which they proposed to cramdown Chase's secured claim on the Mortgage to the appraised value of the Property and lower the interest rate from 8.9% to 5%. (Doc. 2, pp. 8 & 9). On October 6, 2009 the Shirks filed an amended plan, the provisions of which did not affect Chase's rights relating to the WAMU loan (Doc. 22) (the plan (Doc. 2), as amended (Doc. 22), will be referred to as the "Plan").

On October 5, 2009 Chase filed a proof of claim evidencing a secured claim in the amount of $249,299.67 (Claim No. 5) and on October 14, 2009 filed an *Objection to Confirmation of Plan (Docket Number 22 & 2)*(Doc. 23) arguing essentially that § 1322(b)(2) and legal precedent prohibited the Shirks from modifying Chase's rights as a mortgagee holding a claim secured only by a security interest in a debtor's primary residence. The Shirks filed a response to Chase's confirmation objection on November 4, 2009 indicating that they intended to file an adversary proceeding to determine the validity of the Mortgage (Doc. 28).

The Shirks filed their initial complaint initiating this adversary proceeding on No-

---

**1.** On a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), a court may take judicial notice of matters of public record and may consider matters outside the pleadings. *Mirabella v. Univ. of Tennessee,* 915 F.Supp. 925, 926 (E.D.Tenn.1994). Further, "A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP,* 336 F.3d 495, 501 (6th Cir.2003), *cert. denied,* 540 U.S. 1183, 124 S.Ct. 1424, 158 L.Ed.2d 87 (2004); *See also City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.,* 399 F.3d 651, 655, fn. 1 (6th Cir.2005) (Fed.R.Evid. 201 (providing that "[a] court may take judicial notice, whether requested or not" of a "judicially noticed fact" which "must be one not subject to reasonable dispute," a requirement satisfied if the fact is "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."))

**2.** Unless otherwise noted, all statutory references are to the Bankruptcy Code of 1978, as amended, 11 U.S.C. §§ 101–1532 (the "Code"), cited hereinafter in this decision as "§____".

vember 5, 2009 (Doc. 29; Adv. Doc. 1) and filed the Complaint on April 5, 2010 (Adv. Doc. 26). The Complaint asserts the following claims against Chase: violation of due process (Complaint, ¶ 7), declaratory judgment that § 1322(b) does not apply to the Mortgage (Complaint, ¶ 8), misrepresentation (Complaint, ¶ ¶ 9 & 10), violations of the Truth in Lending Act ("TILA") (Complaint, ¶ ¶ 11–17), violation of TARP (Complaint, ¶ 18), negligence (Complaint, ¶ ¶ 19 & 20), and violation of the National Housing Act ("NHA") (Complaint, ¶ 21). The due process, TARP, and NHA claims are based upon Chase's direct alleged conduct or omissions and the remaining claims are based upon Chase's liability as a successor in interest to WAMU on account of WAMU's or its agents' conduct or omissions at the time of the Transaction or leading up to the Transaction.

On November 25, 2009 the court entered an agreed order approved by the Shirks, Chase, and the Chapter 13 Trustee agreeing to conditionally confirm the Plan pending the resolution of this adversary proceeding (Doc. 34). The Plan was confirmed on January 5, 2010 (Doc. 49).

This adversary proceeding pursued a rather tumultuous path peppered with various motions followed by responses on each side, which culminated in Chase's filing of its motion to dismiss the Complaint (the "Motion to Dismiss") (Adv. Doc. 32), the Shirks' response to the Motion to Dismiss (the "Response") (Adv. Doc. 33), and Chase's reply to the Shirks' Response (the "Reply") (Adv. Doc. 34).[3]

### C. Positions of the Parties

In its Motion to Dismiss and Reply, Chase moves to dismiss the Complaint based on Federal Rules of Civil Procedure 12(b)(1) and (6) made applicable through Bankruptcy Rule 7012(b).[4] Chase argues that because it purchased WAMU's assets from the FDIC, the resolution of the Shirks' claims against it as successor to WAMU are governed by the administrative claims resolution process set forth in the Financial Institutions Reform Recovery and Enforcement Act of 1989, Pub. L. No. 101–73, 103 Stat. 183 ("FIRREA") and this court lacks jurisdiction to determine such claims. Chase argues that the direct claims against it should be dismissed because they each fail to state a claim for which relief can be granted by this court.

**3.** On December 4, 2009 Chase moved to extend the time to move or otherwise plead in response to the Debtors' initial complaint (Adv. Doc. 8), which motion was resolved through an agreed order entered on December 12, 2009 giving Chase until December 22, 2009 to move or otherwise plead in response to the complaint (Adv. Doc. 11). Chase filed its original motion to dismiss on December 22, 2009 (Adv. Doc. 13). On January 14, 2010 the parties entered into an agreed order extending the time for the Shirks to file a response to the motion to dismiss. (Adv. Doc. 16). On February 3, 2010 the Shirks moved to amend the complaint (Adv. Doc. 18). On February 4, 2010 the Shirks filed a memorandum opposing Chase's motion to dismiss (Adv. Doc. 19) and on February 15, 2010 Chase filed its reply (Adv. Doc. 21). An order

was entered on March 10, 2010 granting the Shirks' motion to file an amended complaint and giving them until April 2, 2010 to do so (Adv. Doc. 28). After the Shirks filed the Amended Complaint (Adv. Doc. 26), Chase moved to strike the Amended Complaint as untimely (Adv. Doc. 27). The court denied Chase's motion to strike on April 8, 2010 (Adv. Doc. 28) and entered an order allowing the incorporation of prior arguments in any motion under FRCP 12 and gave Chase until April 29, 2010 to file a Rule 12 motion (Adv. Doc. 28).

**4.** Unless otherwise noted, all references to rules of court shall be to the Federal Rules of Bankruptcy Procedure ("BR") or the Federal Rules of Civil Procedure ("FRCP").

In their response, the Shirks candidly declare that "[i]t's true that much of what [Chase] state[s] is the law. However we feel that the Constitution allows this Court more flexibility." Response, p. 1. The Shirks then make several arguments which the court can best describe as "public policy" arguments to justify the relief which they are seeking, some of which seems inconsistent with certain of their allegations in the Complaint. In particular, while the Shirks acknowledge receipt of the notice required under FIRREA, as will be more fully discussed below (a fact they had denied in the Complaint), they seem to question the constitutionality of that notice: ". . . neither debtor were (*sic*) really informed of the transfer to Chase except a publication notice under FIRREA requirements 1821(d)(3)(B)-(C). Not real notice, probably laws written by the banks not understood by legislators even it they read it which is doubtful. No due process." Response, p. 2. They also assert without any legal support that § 1322(b)(2) is inapplicable when the mortgage loan is held by a financial institution which purchased the assets of another bank and that recipients of TARP funds are required to assist property owners in distress. *Id.* Finally, they raise for the first time an argument that the Mortgage should be equitably subordinated. *Id.* at p. 3.[5]

## III. Legal Analysis

### A. Jurisdiction

This court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334 and General Order No. 05–02 of the United States District Court for the Southern District of Ohio referring all bankruptcy cases, matters, and proceedings to the bankruptcy court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K) and (O).

### B. Standard For A Motion to Dismiss Under FRCP 12(b)(1)

A motion to dismiss under FRCP 12(b)(1) challenges the court's subject matter jurisdiction. "A Rule 12(b)(1) motion can either attack the claim of jurisdiction on its face, in which case all allegations of the plaintiff must be considered as true, or it can attack the factual basis for jurisdiction, in which case the trial court must weigh the evidence and the plaintiff bears the burden of proving that jurisdiction exits." *DLX, Inc. v. Kentucky,* 381 F.3d 511, 516 (6th Cir.2004), *citing, RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1133–35 (6th Cir.1996); *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994); *Ohio Nat'l Life Ins. Co. v. United States,* 922 F.2d 320, 325 (6th Cir.1990). In this proceeding, Chase attacks the factual basis for jurisdiction. Therefore, the Shirks have the burden of proving jurisdiction.

As noted above, a motion to dismiss pursuant to FRCP 12(b)(1) for lack of subject matter jurisdiction may refer to the evidence without converting the motion into one for summary judgment. *League of Women Voters v. Brunner,* 548 F.3d 463, 475, fn. 15 (6th Cir.2008) (internal citation omitted). In addition, on a FRCP 12(b)(1) motion, the court is empowered to resolve factual disputes. *Ernst v. Rising,* 427 F.3d 351, 372 (6th Cir.2005).

### C. Standard For A Motion to Dismiss Under FRCP 12(b)(6)

A motion to dismiss under FRCP 12(b)(6), applicable to adversary proceed-

---

**5.** Since subordination of Chase's claim is not sought in the Complaint and a request for equitable subordination is not otherwise properly before the court, there is no basis for the court to issue an order subordinating Chase's claim.

ings through BR 7012(b), for failure to state a claim upon which relief can be granted challenges the legal sufficiency of a complaint. In determining a motion to dismiss, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir.2008), *quoting*, *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir.2007). However, in determining such a motion, a court "need not accept as true legal conclusions or unwarranted factual inferences." *Id.*

The Supreme Court recently clarified the law concerning what a plaintiff must plead in order to survive a FRCP 12(b)(6) motion. *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Under the standard established by *Bell Atlantic Corp. v. Twombly*, the Supreme Court had instructed lower courts to dismiss claims not supported by factual allegations sufficient to "state a claim to relief that is *plausible* on its face." 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (emphasis added). Some courts interpreted *Twombly* to only apply in antitrust cases and other courts found that *Twombly's* pleading requirements could be overcome with a mere assertion of a defendant's responsibility. *Iqbal* makes clear that *Twombly* is not so limited and buttresses the *Twombly* plausibility standard. In *Iqbal*, quoting *Twombly*, the Supreme Court held that Rule 8(a) requires "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (internal citations omitted). Furthermore, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

According to the Court, deciding the adequacy of a complaint requires a two-step analysis. First, a court should identify and reject legal conclusions unsupported by factual allegations, because conclusions masquerading as allegations "are not entitled to the assumption of truth." *Id.* at 1950. Insufficient are "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements", "labels and conclusions", and " 'naked assertion[s]' devoid of 'further factual enhancement.' " *Id.* at 1949. In sum, a complaint that alleges that a defendant caused a plaintiff's injury, without explaining how, does not meet the requirements of FRCP 8(a) and therefore cannot survive a FRCP 12(b)(6) motion. Second, a court should assume the veracity of "well-pleaded factual allegations" and should conduct a "context-specific" analysis that "draw[s] on [the court's] judicial experience and common sense" to determine whether the allegations "plausibly give rise to an entitlement to relief." *Id.* at 1950. Well-pleaded facts that "do not permit the court to infer more than the mere possibility of misconduct" are insufficient to show that plaintiff is entitled to relief. *Id.*

"A court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice." *New England Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir.2003), *cert. denied*, 540 U.S. 1183, 124 S.Ct. 1424, 158 L.Ed.2d 87 (2004); *See also City of Monroe Emps. Ret. Sys. v. Bridgestone Corp.*, 399 F.3d 651, 655, fn. 1 (6th Cir.2005) (Fed.R.Evid. 201 (providing that "[a] court may take judicial notice, whether requested or not" of a "judicially noticed fact" which "must be one not subject to reasonable dispute," a requirement satisfied if the fact is "(1) generally known within the territorial ju-

risdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."))

### D. Principles and Applicability of FIRREA

FIRREA is a complex statute enacted to "create a comprehensive and efficient process for administering the numerous claims that arose in the wake of the widespread failure in the late 1980's of savings and loan institutions." *Village of Oakwood v. State Bank & Trust Co.*, 519 F.Supp.2d 730, 735 (N.D.Ohio 2007), *aff'd*, 539 F.3d 373 (6th Cir.2008). FIRREA was propelled back into the spotlight twenty years later with the recent financial crisis. One of FIRREA's functions is to lay out "rules under which all claims involving an insolvent institution are received and handled." *Id.*

■ Pursuant to the provisions of FIRREA, when the FDIC is appointed as receiver of a closed depository institution, it succeeds to "all rights, titles, powers and privileges of the insured depository institution" and may "take over the assets and operate" the institution. 12 U.S.C. § 1821(d)(2)(A)(i) & (B)(i); *Williams v. FDIC*, 2009 WL 5199237, at *2 (E.D.Cal. December 23, 2009). Further, "[w]hen appointed as a receiver, the FDIC ... steps into the shoes of the failed [financial institution] and operates as its successor." *Id.*, *citing*, *O'Melveny & Myers v. FDIC*, 512 U.S. 79, 114 S.Ct. 2048, 129 L.Ed.2d 67 (1994). The FDIC may liquidate the assets of a failed financial institution or may "transfer any asset *or* liability of the institution. . . ." 12 U.S.C. § 1821(d)(2)(G)(i)(II). The FDIC has the power "to sell an asset ... while retaining a related liability, and no liability is transferred to an assuming institution ... absent an express transfer." *Village of Oakwood v. State Bank & Trust Co.*, 519

F.Supp.2d 730, 739 (N.D.Ohio 2007), *aff'd*, 539 F.3d 373 (6th Cir.2008), *quoting Kennedy v. Mainland Sav. Ass'n.*, 41 F.3d 986, 990–91 (5th Cir.1994).

■ Under FIRREA, the FDIC is required to post notice of the institution's failure in a newspaper and mail notice to the institution's creditors instructing them to present their claims to the receiver by the date specified in the notice, not less than 90 days after the date of publication. 12 U.S.C. § 1821(d)(3)(B). The FDIC has 180 days after a claim is filed to allow or disallow it. 12 U.S.C. § 1821(d)(5)(A). Claims filed after the date set forth in the notice are generally disallowed unless the claimant did not receive notice of the appointment of the receiver in time to file a claim before the stated date, and the claim is filed in time to permit payment of the claim. 12 U.S.C. § 1821(d)(5)(C). The prevailing view, and that adopted by the Sixth Circuit, is that debtors and creditors alike are required to comply with the administrative claims process under FIRREA. *In re Lewis*, 398 F.3d 735, 741–42 (6th Cir.2005). If the claim is not ruled upon after 180 days, the claimant has 60 days to seek administrative review or file an action in the district court. 12 U.S.C. § 1821(d)(6)(A). If he fails to exercise either of these options, then the "claimant shall have no further rights or remedies with respect to such claim." *Id.*

■ Finally, FIRREA bars any court from exercising jurisdiction over:

(i) any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the Corporation has been appointed receiver, including assets which the Corporation may acquire from itself as receiver; or

(ii) any claim relating to any act or omission of such institution or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D). A plaintiff cannot circumvent FIRREA's jurisdictional bar described above by directing a claim towards the assuming bank because doing so would encourage the very litigation that FIRREA aimed to avoid. *Village of Oakwood*, 539 F.3d at 386.

■ In addition to barring any court from exercising jurisdiction over any claim or action as described above unless a claimant first exhausts the administrative claims process, FIRREA also bars any judicial restraints:

> Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of the powers or functions of the Corporation as a conservator or receiver.

12 U.S.C. § 1821(j). This provision prevents a court from granting a remedy of rescission, which, like an injunction, is a "judicial restraint" barred by § 1821(j). *Freeman v. FDIC*, 56 F.3d 1394, 1399 (D.C.Cir.1995); *Jones–Boyle v. Wash. Mut. Bank, F.A.*, 2010 WL 2724287, 2010 U.S. Dist. LEXIS 78208 (N.D.Cal. July 8, 2010).

E. **Analysis of the Shirks' Claims Under FIRREA and FRCP 12(b)(1): FIRREA's Jurisdictional Bar and Anti–Injunction Provision Bar the Shirks' Claims for Misrepresentation, TILA Violations, and Negligence Attributable to WAMU**

■ The Shirks' claims for misrepresentation (Complaint, ¶¶ 9 & 10), TILA violations (15 U.S.C. § 1601, *et seq.*) (Complaint, ¶¶ 11–17), and negligence (Complaint, ¶ 20) constitute claims "relating to any act or omission of [a failed institution] or the Corporation as a receiver" and, therefore, are subject to FIRREA's jurisdictional bar. 12 U.S.C. § 1821(d)(13)(D); *Jackson v. FDIC*, 2010 WL 653151, at *4 (E.D.Mich. Feb. 19, 2010).[6] Because FIRREA deprives this court of jurisdiction to hear any claims against the assets of failed financial institutions unless administrative remedies have been exhausted, the Motion to Dismiss the Complaint pursuant to FRCP 12(b)(1) is granted as to those claims.

In paragraphs nine and ten of the Complaint, the Shirks assert a claim for misrepresentation allegedly made by an agent of WAMU when that agent failed to disclose to the Shirks certain fees and costs associated with the refinancing of their existing loan and the actual interest rate on the new loan. Assuming, for purposes of argument, that the Shirks had established a legal basis for holding WAMU liable for the acts or omissions of one of its agent, these allegations relate to "an act or omission" of WAMU or its agent at or prior to the time of Transaction. Paragraphs 11–17 of the Complaint assert that the Shirks were overcharged for the appraisal of the Property, failed to receive a copy of the appraisal, were charged excessive fees and costs that were not disclosed to them prior to the closing of the refinancing and were not given two copies of the notice to rescind, all in violation of

---

6. As a preliminary matter, for purposes of the Motion to Dismiss based on FRCP (12)(b)(1), the court will consider the Purchase and Assumption Agreement as evidence of Chase's purchase of WAMU's assets from the FDIC. *League of Women Voters*, 548 F.3d at 475, fn.

15. For purposes of the Motion to Dismiss based on FRCP 12(b)(6), the court will take judicial notice of the FDIC's takeover of WAMU. *New England Health Care Emps. Pension Fund*, 336 F.3d at 501.

TILA.[7] Paragraph 20 asserts a negligence claim, alleging that WAMU "permitted negligent underwriting or improvident lending by 'failing in its duty to protect the borrower from unreasonable risk.'" Thus, paragraphs 11–17 and 20 also relate to acts or omissions of WAMU or its agents at the time the loan was made. These claims are all premised solely on the previous conduct of WAMU or its agent and not on any improper conduct by Chase after it acquired WAMU's assets. Accordingly, they fall squarely under the type of claims that the Shirks were required to pursue against the FDIC through the administrative claims process set forth in the provisions of FIRREA and over which no court can exercise jurisdiction. Further, the Shirks cannot circumvent FIRREA's jurisdictional bar by bringing their claims directly against Chase, as purchaser of WAMU's assets from the FDIC, because as noted above, these claims relate to WAMU's acts or omissions. Therefore, having failed to invoke and exhaust the administrative claim process, those claims are barred by FIRREA's jurisdictional bar. *Village of Oakwood*, 539 F.3d at 386.[8]

■ In addition, FIRREA's anti-injunction provision bars the rescission remedy sought by the Shirks. That provision expressly prohibits a court from granting any equitable remedies, such as rescission, to the Shirks. 12 U.S.C. § 1821(j); *Free-*

*man v. FDIC*, 56 F.3d 1394, 1399 (D.C.Cir. 1995); *Jones–Boyle v. Wash Mut. Bank, F.A.*, 2010 WL 2724287, 2010 U.S. Dist. LEXIS 78208 (N.D.Cal. July 8, 2010). Therefore, even in the absence of FIRREA's jurisdictional bar, this court could not have granted rescission of the note and Mortgage.

Accordingly, the Shirks' claims based upon WAMU's alleged misrepresentation, negligence and violations of TILA are dismissed for lack of subject matter jurisdiction under FRCP 12(b)(1). Because this court does not have jurisdiction to determine the Shirks' claims, it need not address the substance of Chase's Motion to Dismiss based on FRCP 12(b)(6) as to those claims.[9]

**F. The Shirks' Remaining Claims Fail To State Claims Upon Which Relief Can Be Granted and are Dismissed Pursuant to FRCP 12(b)(6)**

Even if the court accepts all of the remaining allegations of the Complaint as true, the Shirks cannot prove any set of facts in support of the remaining causes of action that would entitle them to relief. Therefore, Chase's Motion to Dismiss is granted pursuant to FRCP 12(b)(6) as to the claims pertaining to Chase's conduct or omissions (failure of due process of law

---

7. Because it is dismissing the TILA claim based on lack of subject matter jurisdiction, the court need not address the statute of limitation issue raised by Chase. *See* Motion to Dismiss, p. 13.

8. The only argument that the Shirks appear to make in their Response in opposition to dismissal of these claims is that they did not receive proper notice of the FDIC's takeover of WAMU and, therefore, that their Fifth and Fourteenth Amendment due process rights were violated. That argument is addressed in the following section of this decision.

9. The Debtors also seek an order from this court finding "the agent broker guilty of common law fraud and misrepresentation of income[.]" Complaint, ¶ 6 of the prayer for relief. The court cannot decide the rights and liabilities of a person not joined as a party to a suit. *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968). The agent/broker is not a party to this proceeding. Therefore this court declines to make any findings as to the agent broker. *See* FRCP 19 made applicable to this proceeding through BR 7019.

(Complaint, ¶ 7); declarative judgment that § 1322(b) does not apply to the Mortgage (Complaint, ¶ 8), violation of TARP (Complaint, ¶ 18), negligence (Complaint, ¶ 19), and violation of the NHA (Complaint, ¶ 21)). These claims set forth mere conclusory allegations that are not supported by well-plead facts or law and fall short of the pleading requirements established by the Supreme Court in *Twombly* and *Iqbal*.

1. *There Is No Issue As to the Shirks' Receiving Publication or Other Notice of the FDIC's Takeover of WAMU and the Shirks Have Failed To State A Claim Upon Which Relief Can Be Granted As To Their "Failure Of Due Process Of Law" Claim Asserted In Paragraph 7 Of Their Complaint and, Therefore, That Claim Must Be Dismissed Pursuant To FRCP 12(B)(6)*

The Shirks allege that they did not receive proper notice of the "takeover of Washington Mutual by the Defendant Chase" and that, as a result, they were not aware that they needed to exhaust their administrative remedies under the FIRREA prior to filing a lawsuit. Complaint, ¶ 7. Therefore, they contend that their due process rights under the Fifth and Fourteenth Amendments of the United States Constitution were violated. *Id.* However, in their Response, they state that "neither debtor were really informed of the transfer to Chase except a publication notice under FIRREA requirements 1821(d)(13)(3)(B)-(C)" (*sic*). The court will first address the potential failure to receive the FIRREA notice and then turn to the constitutional challenge grounded on failure to be afforded due process of law.

The Shirks appear to misconstrue the notice required under FIRREA. They allege that they did not receive notice of WAMU's takeover by Chase. Under FIRREA, the FDIC, "upon its appointment as receiver" is required to publish notice that the failed institution's creditors must file claims with the FDIC by a specified date not less than 90 days after the date of the publication. 12 U.S.C. § 1821(d)(3)(B). First, the FDIC is not required to give notice of its disposition of the assets of a failed institution. It is required to give notice of its takeover of a failed financial institution. *Id.* In the Complaint, the Shirks do not allege that the FDIC failed to give such notice. In fact, they acknowledge in their Response that they probably received "a publication notice under the FIRREA requirements ..." Response, ¶ 1. Second and more importantly, courts have held time and time again that the FDIC's failure to mail notice of the FDIC's takeover of a failed financial institution does not relieve claimants from exhausting their administrative remedies as a condition to seeking relief in courts. *Freeman*, 56 F.3d at 1402 (citing cases); *see also Meliezer v. Resolution Trust Co.*, 952 F.2d 879, 883 (5th Cir.1992) (Federal agencies do not lose jurisdiction by their failure to comply with statutory time limits unless the statute demonstrates congressional intent that this result occur.); *Ladd v. Second Nat. Bank of Warren*, 941 F.Supp. 87, 90–91 (N.D.Ohio 1996). Congress did not intend for the FDIC to lose jurisdiction based on its failure to mail a takeover notice as FIRREA itself delineates the parameters within which claimants are exempt from strict compliance with administrative claims process. Specifically, FIRREA provides the receiver discretion to allow late-filed claims if the claimant did not receive notice of the appointment of the receiver in time to file a claim and such claim is filed in time to permit its payment. 12 U.S.C. § 1821(d)(5)(C)(i) & (ii); *Meliezer*, 952 F.2d at 882–83; *Intercontinental Travel Mktg., Inc. v. F.D.I.C.*, 45 F.3d 1278, 1285 (9th Cir.1994). Thus, even if the Shirks

failed to receive notice of the FDIC's takeover of WAMU, they were still not relieved of their obligation to follow FIRREA's administrative claim process. The Shirks have not made any allegation of fact that they submitted such a claim, timely or untimely.

Moreover, while FIRREA requires actual notice to known creditors and claimants, "common sense dictates that actual notice cannot be given to those with inchoate claims of lender malpractice." *F.D.I.C. v. James J. Madden, Inc.*, 847 F.Supp. 374, 375 (D.Md.1994). At the time of the FDIC takeover of WAMU, the Shirks had not filed any claims against WAMU. Therefore, any potential claim they may have had at that time was inchoate and publication notice was sufficient under the circumstances. *Id.* Accordingly, a lack of actual notice does not relieve the Shirks from exhausting FIRREA's administrate remedies and the jurisdictional bar erected by FIRREA applies to the Shirks' claims attributable to the acts or omissions of WAMU and its agents.

The Shirks' challenge as to the adequacy of the notice provided to them of the FDIC's takeover of WAMU on due process grounds also fails. The Shirks contend that Chase deprived them of an interest in property in violation of the Fifth and Fourteenth Amendments of the United States Constitution. Complaint, ¶ 7.

The Due Process Clause of the Fifth Amendment of the United States Constitution provides that "[n]o person shall ... be deprived of life, liberty, or property without due process of law[.]" U.S. Const. amend. V. The Fourteenth Amendment of the United States Constitution makes the Fifth Amendment applicable to the States. *See Hibben v. Smith*, 191 U.S. 310, 325, 24 S.Ct. 88, 48 L.Ed. 195 (1903) ("The 14th Amendment ... legitimately operates to extend to the citizens and residents of the states the same protection against arbitrary state legislation affecting life, liberty, and property as is offered by the 5th Amendment...."). As Chase suggests in its Motion to Dismiss, "the Fifth Amendment restrains only the federal government from denying an individual due process of law." *McCreary v. Brevard Cty.*, 2010 WL 298395, at *3 (M.D.Fla. Jan.20, 2010) (slip copy), *citing, Barron v. City of Baltimore*, 32 U.S. 243, 247, 7 Pet. 243, 8 L.Ed. 672 (1833). Further, Section 1 of the Fourteenth Amendment restrains the states from depriving any person of life, liberty or property without the due process of law. *Laney v. Farley*, 501 F.3d 577, 581 (6th Cir.2007). These constitutional restraints on governmental power are not applicable to private citizens or entities. *United States v. Morrison*, 529 U.S. 598, 621, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), *citing, Shelley v. Kraemer*, 334 U.S. 1, 13, fn. 12, 68 S.Ct. 836, 92 L.Ed. 1161 (1948); *Walker v. Cognis Oleo Chemical, LLC*, 2010 WL 717275, at *5 (S.D.Ohio Feb.26, 2010) (slip copy).

The only causes of action stated in the Complaint are against Chase, either on account of its own conduct or omissions or on account of WAMU's acts or omissions. Neither the Fifth nor the Fourteenth Amendment applies to either WAMU or Chase, both private financial institutions and the Shirks were not deprived of any potential cause of action that they may have had against WAMU and now Chase as its successor in violation of the Fifth or Fourteenth Amendments. Accordingly, the Shirks have failed to state a claim upon which relief can be granted as to their "Failure of Due Process of Law" claim and, therefore, that claim must be dismissed pursuant to FRCP 12(b)(6).

2. *Chase Is Entitled To The Protections Afforded By § 1322(b)(2)*

The Shirks allege, without any statutory or jurisprudential support, that

the Mortgage is not entitled to the protections of § 1322(b)(2) because the transaction between Chase and the FDIC was a commercial transaction. A simple reading of the language of § 1322(b)(2) suggests otherwise.

Section 1322(b)(2) prohibits modification of the rights of the holder of a secured claim when that claim is secured by "a security interest in real property that is the debtor's principal residence." 11 U.S.C. § 1322(b)(2). Thus, by virtue of this provision, a court can modify the debt of a mortgage secured by, for example, a vacation home, but may not reduce the amount of the creditor's claim, change the interest rate on the claim, or otherwise modify the rights of a creditor holding a mortgage secured by a debtor's principal residence.[10]

Nothing in the language of § 1322(b)(2) restricts its applicability based upon the manner in which a creditor holding a mortgage on a debtor's primary residence acquires its secured claim. In fact, the sale and assignment of mortgage loans, particularly in packages for securitization purposes, is common place. Section 1322(b)(2) is applicable to mortgage loans secured by a security interest in the principal residence irrespective of whether the holder of the secured claim at the time the bankruptcy petition is filed originated the loan or acquired it through an assignment. The key to § 1322(b)(2) is whether the lien is a security interest in the debtors' principal residence. The nature of the transaction through which the holder of the secured claim acquired the security interest

is irrelevant as to whether § 1322(b)(2) applies. The Shirks' proposed construction of § 1322(b)(2) would all but eviscerate the protections afforded to mortgage lenders by that provision under today's home lending practices.

The Complaint does not allege, nor do the Shirks argue, that the Property is not the Shirks' principal residence. Nor do the Shirks argue that the loan is wholly unsecured—that is—that there is no value in the Property to which the Mortgage attaches. Accordingly, pursuant to § 1322(b)(2), the Mortgage cannot be modified and the Shirks' claim that § 1322(b)(2) is inapplicable is dismissed pursuant to FRCP 12(b)(6).

3. *The Shirks' Claims For Violation of TARP Public Policy Are Dismissed Because TARP Does Not Provide A Private Cause Of Action Against Chase*

The Shirks allege that "Lender" violated the intent and purpose of TARP when "it reneged on a 'public policy' to assist property owners" and by failing to make mortgage loans more affordable. Complaint, ¶¶ 18 & 19. These claims must be dismissed pursuant to FRCP 12(b)(6) because no statute related to TARP exists that provides a private right of action against mortgage lenders for violating the purpose or policy of TARP.

Deciding the viability of the Shirks' claim first requires determining whether TARP supports a private right of action. Congress enacted the Emergency Economic Stabilization Act ("EESA") on Oc-

---

**10.** An exception to § 1322(b)(2) is a mortgage loan that is wholly unsecured, which, within the Sixth Circuit and in many other Circuits, may be modified by stripping the lien, leaving the creditor with only a nonpriority unsecured claim. *See Lane v. Western Interstate*

*Bancorp. (In re Lane)*, 280 F.3d 663 (6th Cir. 2002) (Despite the language of § 1322(b)(2), a Chapter 13 debtor can modify a "wholly unsecured mortgage" (i.e. where there is no value in the property in excess of superior liens on a debtor's principal residence)).

tober 3, 2008 in order "to immediately provide authority and facilities that the Secretary of the Treasury can use to restore liquidity and stability to the financial system of the Unites States ... and to ensure that such authority and such facilities are used in a manner that protects home values [and] ... preserves home-ownership...." 12 U.S.C. § 5201(1) & (2)(A)(B). Title I of EESA authorizes the Treasury Secretary "to establish the Troubled Asset Relief Program, which became known as TARP to purchase, and to make and fund commitments to purchase, troubled assets from any financial institution, on such terms and conditions as are determined by the Secretary." 12 U.S.C. § 5211(a)(1). In exercising the powers granted to him under TARP, the Secretary is directed to take into consideration the need to help families keep their homes and to stabilize communities. 12 U.S.C. § 5213(2). Under TARP, the Secretary's authority is checked by oversight committees and judicial reviews. 12 U.S.C. §§ 5214 & 5229; *Pantoja v. Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177, 1185 (N.D.Cal.2009).

Section 5229 expressly addresses judicial review under TARP. 12 U.S.C. § 5229. Section 5229(a) gives a private right of action to individuals specifically harmed by the Secretary's actions, allowing courts to set aside the Secretary's action "if found to be arbitrary, capricious, an abuse of discretion or not in accordance with the law." 12 U.S.C. § 5229(a). While this section permits the filing of an action directly against the United States Secretary of the Treasury, it does not, however, permit a private right of action against fund recipients or other nongovernmental entities. *Pantoja*, 640 F.Supp.2d at 1185; *see also Gardner v. American Home Mortg. Servicing, Inc.*, 691 F.Supp.2d. 1192, 1203

(E.D.Cal.2010); *Huestis v. Indymac Fed. Bank*, 2010 WL 1416714, at *7 (E.D.Cal. Apr.8, 2010) (slip copy). Further, the existence of other remedies in § 5229 is sufficient under federal common law to imply that Congress lacked the requisite intent to provide for a private right of action against fund recipients under TARP. *Bank v. Homes By Williamscraft, Inc.*, 2009 WL 3753585, at *2 (N.D.Ga. Nov.6, 2009) (slip copy).

The Shirks fail to define the term "Lender" and to specify which provisions of TARP Chase allegedly violated. Assuming that "Lender" refers to Chase, as a fund recipient, and that the alleged violations refer to the EESA and TARP provisions mandating the Secretary to ensure that he uses his authority under EESA "in a manner that protects home value and preserves home ownership" and to help keep families in their home (12 U.S.C. § 5201(1) & (2)(A)(B); 12 U.S.C. § 5213(2)), the statute itself prohibits and courts reject any interpretation that would provide the Shirks with a private right of action against Chase for violating the intent and purpose of EESA and TARP.

Accordingly, the court finds that the Shirks' claims (Complaint, ¶¶ 18 & 19) that Chase violated the intent and purpose of or public policy related to EESA and TARP fail to state a claim upon which relief can be granted and, therefore, those claims must be dismissed pursuant to FRCP 12(b)(6).

4. *The Shirks' Claim For Violation of the NHA Is Dismissed Because the NHA and Accompanying HUD Regulations Do Not Provide a Private Right of Action*

The Shirks' final count asserts "Lender" violated the NHA, 12 U.S.C. § 1701 *et seq.*,

by "not having a face to face meeting with debtor after they were behind three payments." Complaint, ¶ 21. In response, Chase argues that the Shirks cannot state a claim under the NHA because the NHA provides no private right of action to mortgagors against mortgagees. The court agrees with Chase.

■ At the outset, the Shirks' claim relating to the NHA fails to meet the standards set forth by the Supreme Court in *Twombly* and *Iqbal.* The Shirks do not cite any particular statutory provision or regulation pertaining to the NHA which Chase has allegedly violated. In addition, the Complaint is devoid of any factual allegation that the Mortgage is governed by the NHA and its related regulations, that Chase accelerated the Mortgage in violation of the NHA and regulations, or that Chase was required under the regulations to provide a face to face meeting to the Shirks. The single sentence laying out the Shirks' claim is exactly what the Supreme Court in *Twombly* described as a "naked assertion" which under *Iqbal* is "not entitled to the assumption of truth." This claim therefore, on that basis alone, must be dismissed. *Twombly,* 550 U.S. at 556–57, 127 S.Ct. 1955 and *Iqbal,* 129 S.Ct. at 1949–50.

Assuming, however, that the Shirks set forth a plausible claim, it appears that that claim arises from the interpretation of 24 C.F.R. § 203.604, the regulation of the Housing and Urban Development Administration ("HUD") requiring a face to face meeting under certain circumstances as a condition to a mortgagee's exercising its state rights upon default. This regulation reads in pertinent part:

(b) The mortgagee must have a face-to-face interview with the mortgagor, or

make a reasonable effort to arrange such a meeting, before three full monthly installments due on the mortgage are unpaid. If default occurs in a repayment plan arranged other than during a personal interview, the mortgagee must have a face-to-face meeting with the mortgagor, or make a reasonable attempt to arrange such a meeting within 30 days after such default and at least 30 days before foreclosure is commenced. . . .

(c) A face-to-face meeting is not required if:

(1) The mortgagor does not reside in the mortgaged property,

(2) The mortgaged property is not within 200 miles of the mortgagee, its servicer, or a branch office of either,

(3) The mortgagor has clearly indicated that he will not cooperate in the interview,

(4) A repayment plan consistent with the mortgagor's circumstances is entered into to bring the mortgagor's account current thus making a meeting unnecessary, and payments thereunder are current, or

(5) A reasonable effort to arrange a meeting is unsuccessful.

24 C.F.R. § 203.604(b) & (c).

■ It is well-established that the NHA and attending regulations do not expressly or implicitly create a private right of action to mortgagors for a mortgagee's noncompliance with the Act or regulations. *Federal Nat. Mortg. Ass'n v. LeCrone,* 868 F.2d 190, 193 (6th Cir.1989) (no express or implied right of action in favor of the mortgagor exists for violation of HUD mortgage servicing policies), *citing, United States v. Neustadt,* 366 U.S. 696, 709, 81

S.Ct. 1294, 6 L.Ed.2d 614 (1961) (no legal relationship exists between the FHA and individual mortgagors); *Moses v. Banco Mortg. Co.*, 778 F.2d 267, 271–72 (5th Cir. 1985); *Miller v. GE Capital Mortg. Servs., Inc. (In re Miller)*, 124 Fed.Appx. 152, 154–55 (4th Cir.2005) (no express or implied right of action under 12 U.S.C. § 1707 et seq.); *Mertan v. Am. Home Mortg. Serv., Inc.*, 2009 WL 3296698 (C.D.Cal. Oct.13, 2009); *Baker v. Northland Mortg. Co.*, 344 F.Supp. 1385 (N.D.Ill. 1972); *Wells Fargo Home Mortg., Inc. v. Neal*, 398 Md. 705, 922 A.2d 538, 543–44 (2007).

Accordingly, even assuming that the Mortgage was insured under the NHA and HUD regulations were applicable to the Mortgage, which facts were not alleged, and that none of the exceptions to 24 C.F.R. § 203.604 applied, the Shirks' allegation that they failed to receive the face-to-face meeting with Chase does not give rise to an entitlement to relief because the NHA and its related regulations do not provide an express or implied private right of action to enforce compliance with their provisions. On that basis, this final claim must be dismissed pursuant to FRCP 12(b)(6).

## IV. Conclusion

In summary, the court grants JP Morgan Chase Bank N.A.'s Motion to Dismiss pursuant to FRCP 12(b)(1) as to the Shirks' misrepresentation (Complaint, ¶¶ 9 & 10), Truth in Lending violations (Complaint, ¶¶ 11–17), and failure of duty—negligence (Complaint, ¶ 20) claims based on FIRREA's jurisdictional bar. Further, even in the absence of FIRREA's jurisdic-

tional bar, FIRREA's anti-injunction provision prevents the court from considering the Shirks' request for rescission of the Mortgage. The court also grants the Motion to Dismiss as to the failure of duty—negligence claim (Complaint, ¶ 19) and as to the Shirks' remaining claims (failure of due process of law) (Complaint, ¶ 7); inapplicability of § 1322 (Complaint, ¶ 8); violation of public policy under TARP (Complaint, ¶ 18); and violation of National Housing Act (Complaint, ¶ 21) pursuant to FRCP 12(b)(6). In particular, the Shirks' due process claim is dismissed based on the inapplicability of the Fifth and Fourteenth Amendments of the United States Constitution to private entities, including Chase. The Shirks' violation of TARP (Complaint, ¶¶ 18 & 19) and the National Housing Act claims (Complaint, ¶ 21) are dismissed because the applicable statutes and regulations do not provide a private right of action to the Shirks. Finally, the court determines as a matter of law that § 1322(b)(2) applies to the Mortgage.

The court is simultaneously entering an order consistent with this decision dismissing the Plaintiffs' Amended Complaint with prejudice.

**IT IS SO ORDERED.**