**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 02-1050**

_____

In Re:  WILLIAM T. MILLER, III,

                                                        Debtor.

------------------------------

WILLIAM T. MILLER, III,

                                        Plaintiff - Appellant,

        versus

GE CAPITAL MORTGAGE SERVICES, INCORPORATED,

                                        Defendant - Appellee,

        and

GEORGE I. VOGEL, II,

                                                        Trustee.

_____

Appeal from the United States District Court for the Western
District of Virginia, at Roanoke.  Samuel G. Wilson, Chief District
Judge.  (CA-01-733-7)

_____

Argued:  September 24, 2002        Decided:  February 3, 2005

_____

Before WIDENER, NIEMEYER, and GREGORY, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**ARGUED:** Gary Michael Bowman, Roanoke, Virginia, for Appellant.
Hilary Stephen Cairnie, DYKEMA GOSSETT, P.L.L.C., Washington, D.C.,

for Appellee.  **ON BRIEF:** Scott W. Dales, DYKEMA GOSSETT, P.L.L.C., Washington, D.C., for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Plaintiff, William T. Miller, III, appeals from the district court's decision that a private right of action does not exist under 12 U.S.C. § 1715u(a). We affirm.

William T. Miller, III, owned a single-family home located at 904 Locust Drive, Pearisburg, Virginia. The home was subject to a mortgage held by G.E. Capital Mortgage Services, Inc.("G.E. Capital"). On February 13, 2001, Miller filed a voluntary petition for bankruptcy under Chapter 7 of the Bankruptcy Code. On March 22, 2001, Miller filed an adversary proceeding against G.E. Capital in the Western District of Virginia to avoid the prepetition foreclosure of his home.

Following an adverse decision by the bankruptcy court, on appeal to the district court, Miller argued that an implied private right of action existed under 12 U.S.C. § 1715u(a) of the National Housing Act and that the case should be remanded to the bankruptcy court for analysis under that statute. G.E. Capital agreed that § 1715u was applicable but argued that the section did not create a private remedy for a mortgagee's non-compliance with mortgage servicing regulations. The district court examined § 1715u(a) and determined that a private right of action was not implied. From this order Miller appeals.[1]

_____

[1] G.E. Capital initially made the argument that Miller did not have standing to pursue his claim, taking the position that any such right was the property of his trustee in bankruptcy. Any

3

Miller argues as error the district court's decision that 12 U.S.C. § 1715u(a) does not imply a private cause of action for a mortgagor to sue a mortgagee for failure to comply with § 1715u(a) loss mitigation requirements. We review this claim de novo. See In re Richman, 104 F.3d 654, 656 (4th Cir. 1997).[2]

Private rights of action, explicit or implicit, to enforce federal laws must be created by Congress. See Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001). In determining whether Congress has implied a private right of action in a federal statute, courts have weighed the following four factors articulated by the Supreme Court in Cort v. Ash:

> First, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,' -- that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to

dispute about standing, however, has been resolved by the order of the bankruptcy court, not appealed from, of May 15, 2002, that Miller's claim against G.E. Capital was held to be a burdensome asset and directed the trustee to abandon his interest in such claim. Thus, the position taken by G.E. Capital, that Miller lacked standing to pursue his claim, was made moot by the order of the bankruptcy court of May 15, 2002, and the same is dismissed for that reason.

[2] Miller also argued in the proceedings below that G.E. Capital had not engaged in certain loss mitigation procedures required by "24 C.F.R. 201.50 [§ 203.600, et seq.] such as making personal contact with Mr. Miller regarding the default, discussing a repayment plan with Mr. Miller, or notifying Mr. Miller of his right to reinstate the loan prior to the foreclosure sale." Br. p.2. Any violation of those regulations, however, is argued on appeal only in the context of the sole issue raised: "Did the district court err when it ruled that the appellant has no private right of action under 12 U.S.C. § 1715u?" Br. p.1.

create such a remedy or to deny one?  Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff?  And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?  (citations omitted)

Cort v. Ash, 422 U.S. 66, 78 (1975).

In cases subsequent to Cort v. Ash, the inquiry has centered more on Congress's intent to create a federal cause of action.  See Gonzaga University v. Doe, 536 U.S. 273, (2002); Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001).  In Love v. Delta Air Lines, 310 F.3d 1347, 1351-52 (11th Cir. 2002) the Eleventh Circuit noted that "[T]he Supreme Court has gradually receded from its reliance on three of the [. . .] four [Cort] factors," rather relying on legislative intent to create a private right of action as the touchstone of its analysis.  Thus, we review the text and structure of § 1715u(a) "to determine whether it displays an intent [by Congress] to create not just a private right, but also a private remedy."  See Alexander v. Sandoval, 532 U.S. 275, 286 (2001).

To determine whether a statute creates a federal private right, we  look to the statutory text for "'rights-creating' language." See  Alexander v. Sandoval, 532 U.S. 275, 288 (2001). "Rights-creating language" is language that "explicitly confer[s] a right directly on a class of persons that include[s] the plaintiff."  Cannon v. University of Chicago, 441 U.S. 677, 690 n.13 (1979). Section 1715u(a) provides:

> Upon default of any mortgage insured under this subchapter [12 U.S.C.A. § 1707 et seq.], mortgagees shall engage in loss mitigation actions for the purpose of providing an alternative to foreclosure (including but not limited to actions such as special forbearance, loss modification, and deeds in lieu of foreclosure, but not including assignment of mortgages to the Secretary under section 204(a)(1)(A) [12 U.S.C.A. § 1710(a)(1)(A)]) as provided in regulations by the Secretary.

12 U.S.C. § 1715u(a).

We agree with the district court in its finding that § 1715u(a) lacks "rights-creating" language. Section 1715u(a) addresses only the mortgagees' obligation to engage in loss mitigation. It does not mention nor explicitly confer a right upon mortgagors, such as Miller.

Furthermore, the statute's focus is on regulating mortgagees not protecting mortgagors. Miller argues that § 1715u(a) is intended to encourage loss mitigation, therefore § 1715u(a) implies a cause of action in his favor. But an examination of § 1715u shows that the losses which are to be mitigated do not include an assignment of the mortgage to the Secretary. And just as important, § 1715u(f) provides that "[n]o provision of this chapter, <u>or any other law</u>, shall be construed to require the Secretary to provide an alternative to foreclosure for mortgagees on 1- to 4- family residences." (italics added) This provision indicates Congress' intent not to require the HUD Secretary to provide a cause of action as a loss mitigation alternative for single family homeowners like Miller. Thus, it is evident Congress

6

did not intend to imply a private cause of action in favor of the mortgagor by enacting § 1715u(a).

We also consider the structure of the statute, within which the provision in question is embedded, to determine whether the statute provides a remedy or an enforcement mechanism. See Alexander v. Sandoval, 532 U.S. 275, 289-91 (2001). Miller argues that because there is no explicit sanction for mortgagees' failure to engage in loss mitigation the provision is meaningless.

As the district court found, Congress expressly included a comprehensive enforcement mechanism to police mortgagees' compliance with the loss mitigation procedures and other provisions by establishing the Mortgagee Review Board. See 12 U.S.C. § 1708(c). The Board is authorized to pursue a variety of actions against a noncompliant mortgagee, including, but not limited to issuing a letter of reprimand, placing the mortgagee on probation, suspending the mortgagee, and withdrawing the mortgagee for not less than one year. See 12 U.S.C. § 1708(c). In addition, the HUD Secretary may impose civil monetary penalties against the mortgagee for failure to engage in loss mitigation. See 12 U.S.C. § 1735f-14(b)(1)(I). The statutory remedies at the disposal of the Secretary and the Board are extensive and their inclusion indicates that Congress did not intend to create a private right of action for mortgagors such as Miller. As the Supreme Court stated in Sandoval, "[t]he express provision of one method of enforcing a

7

substantive rule suggests that Congress intended to preclude others." Alexander v. Sandoval, 532 U.S. 275, 290 (2001).

Miller also argues that the legislative history of the statute points toward the creation of an implied private right of action. We have considered the same and are of opinion that the legislative history is not in conflict with the clear indication in the statute itself that no private right of action is implied.

In conclusion, we decide that the plaintiff has not demonstrated that Congress intended to imply a private right of action in § 1715u(a). Accordingly, the judgment of the district court is

AFFIRMED.

8