**In re Betty Jo SHELTON, Debtor.**

**Betty J. Shelton, Plaintiff,**

v.

**Wells Fargo Bank, N.A., Defendant.**

**Bankruptcy No. 12–40386.**
**Adversary No. 12–4069.**

United States Bankruptcy Court,
W.D. Missouri.

Oct. 31, 2012.

James D. Jenkins, Susan Kephart, Legal Aid of Western Missouri, Kansas City, MO, for Plaintiff.

Cassandra L. Writz, Bryan Cave, Kansas City, MO, Eric D. Martin, Bryan Cave LLP, St. Louis, MO, for Defendant.

*ORDER DENYING DEFENDANT'S MOTION TO DISMISS AND DIRECTING PARTIES TO FILE STATEMENTS REGARDING THE COURT'S AUTHORITY TO ENTER FINAL JUDGMENT*

ARTHUR B. FEDERMAN, Bankruptcy Judge.

Debtor Betty Jo Shelton filed this adversary proceeding against Wells Fargo Bank, N.A., asserting several causes of action against it relating to the foreclosure of her home. Wells Fargo filed a Motion to Dismiss, and Ms. Shelton voluntarily dismissed Counts I, II, and VI of the Complaint, without prejudice. The following causes of action remain after the voluntary dismissal of Counts I, II, and VI: Count III for breach of the duty of good faith and fair dealing; Count IV for violation of the Missouri Merchandising Practices Act; Count V for breach of contract; and Count VII for quiet title. For the reasons that follow, the Motion to Dismiss Counts III, IV, V, and VII is DENIED.

**STANDARD FOR DISMISSAL**

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."[1] In ruling on a motion to dismiss, the Court must accept as true all of the complaint's factual allegations and view them in the light most favorable to the nonmoving party.[2] Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[3] The pleading standard under Rule 8 does not require "detailed factual allegations," but "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[4]

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "mere-

---

1. Fed.R.Civ.P. 12(b)(6), made applicable here by Fed. R. Bankr.P. 7012.

2. *Hastings v. Wilson*, 516 F.3d 1055, 1058 (8th Cir.2008).

3. Fed.R.Civ.P. 8(a)(2), made applicable here by Fed. R. Bankr.P. 7008.

4. *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). *See also Gomez v. Wells Fargo Bank, N.A.*, 676 F.3d 655, 660 (8th Cir.2012) (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 677–78, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)).

ly consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' "[5]

## THE DEBTOR'S ALLEGATIONS

Taking Ms. Shelton's recitation of the facts as true, and giving her all favorable inferences, on December 23, 1998, Ms. Shelton obtained a loan in the principal amount of $71,932 from PNC Mortgage Corporation of America to finance the purchase of her home. The loan was evidenced by a Promissory Note and Deed of Trust on the home, and was insured by the Federal Housing Administration, which is now part of the Department of Housing and Urban Development.

According to the Complaint, ¶ 9(d) of the Deed of Trust provides:

Regulations of HUD Secretary. In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

Ms. Shelton asserts that, pursuant to the National Housing Act,[6] in the event of default or imminent default of any mortgage insured under the Act, the mortgagee is required to engage in loss mitigation for the purpose of providing an alternative to foreclosure.[7] She also asserts that HUD has issued regulations and other guidance in regard to servicing and foreclosing on mortgages it insures which are designed to ensure that the mortgagee takes steps to avoid unnecessary foreclosures of FHA-insured loans and loss to the government.[8] To obtain the loan through the FHA Insured Mortgage Program, Ms. Shelton was required to pay premiums for mortgage insurance, paying an upfront mortgage insurance premium of 1.5% of the loan amount, and a yearly fee of .5% of the unpaid balance of the loan.

Wells Fargo says that it has owned and serviced the loan since 2007.[9] Ms. Shelton asserts that, as servicer of the Loan, Wells Fargo was required to comply with HUD regulations requiring that it engage in loss mitigation before commencing foreclosure proceedings.[10]

In 2007, Ms. Shelton was employed as a certified nurse's aide. However, her work hours were reduced, resulting in a loss of income so that at times she could not afford to pay her full mortgage payment. In 2009, Ms. Shelton was laid off from her job. At that point, she fell substantially behind in her mortgage payments to Wells Fargo. She says she attempted to find other employment and take other measures to increase her income, but without success.

Ms. Shelton says that, beginning in 2009, and through 2011, she contacted Wells Fargo on repeated occasions requesting loss mitigation relief pursuant to HUD regulations. She also sought the assis-

---

**5.** *Id.* (citations omitted).

**6.** 12 U.S.C. § 1701, *et seq.*

**7.** 12 U.S.C. § 1715u.

**8.** The "Servicing Responsibilities" are set forth at 24 CFR § 203.500 *et seq.*

**9.** Ms. Shelton originally asserted that the assignment from PNC to Wells Fargo was im-

proper. The causes of action relating to that assertion are among those which were previously voluntarily dismissed without prejudice. I will assume for these purposes that Wells Fargo is both the owner and servicer of Ms. Shelton's loan.

**10.** 24 C.F.R. § 203.606.

tance of NACA, a housing counseling agency.

By July, 2010, Ms. Shelton says she again had a steady source of income from a social security retirement pension. She asserts that she should have qualified for an FHA loan modification based on her income and expenses at the time. However, she asserts, Wells Fargo refused her requests for loss mitigation, sending her form letter responses, which reflected a failure to genuinely consider her for the loss mitigation relief for which she was eligible. By way of example, Ms. Shelton alleges that Wells Fargo sent her a letter dated October 24, 2011 informing her that it needed income documentation, a hardship letter, and other documents to move forward on her request for mortgage assistance. The very next day, and without waiting for any such documents from Ms. Shelton per the first letter, the same Wells Fargo representative immediately followed the October 24, 2011 letter with one dated October 25, 2011 advising her that:

> We have carefully reviewed the information you sent us and explored a number of mortgage assistance options. At this time, you do not meet the requirements of the program because: Your pending mortgage assistance required approval from the investor that ultimately owns your mortgage, and the investor has declined the request.

The letter then outlined other possible loss mitigation options, including a short sale and deed in lieu of foreclosure.

Without providing Ms. Shelton with the opportunity to take advantage of these other loss mitigation options or to learn why "the investor" had declined her request without providing her an opportunity to submit documentation, Wells Fargo sent a third letter dated October 27, 2011 advis-

ing her that it would not be able to help her find a mortgage assistance solution and, for that reason, the normal collections process would resume, "if appropriate."

Ms. Shelton alleges that Wells Fargo failed to give her the opportunity to pursue a short sale or deed in lieu of foreclosure, which might have provided her with some limited financial compensation or other benefits.

After being notified that her requests for loss mitigation were denied, Ms. Shelton says she continued to submit documents to Wells Fargo in the hope that it would reconsider its decision and grant her the loss mitigation relief to which she asserts she was entitled under the FHA program. Ms. Shelton asserts that HUD regulations required Wells Fargo to consider six different loss mitigation options, including a possible 12–month forbearance or loan modification, which they did not do.

Instead, Wells Fargo foreclosed on the home on January 11, 2012. Ms. Shelton says she did not receive any of the notices of the foreclosure sale. Wells Fargo purchased the home at the foreclosure sale for $105,820.49. Ms. Shelton asserts that this is the amount of the claim for mortgage insurance benefits which Wells Fargo has or will make to HUD under the FHA Insured Mortgage Program. However, she says the actual fair market value of the home is only about $76,995, according to the Jackson County Appraiser.

Ms. Shelton also says that Wells Fargo was obligated under HUD regulations to inform her of her right to request an "occupied conveyance" of her home, whereby she would be permitted to rent her home from HUD for a period of time,[11] but that it did not inform her of that opportunity in a timely manner. Despite not being timely notified of the right to request an occu-

---

11. *Citing* 24 CFR § 203.675.

pied conveyance, on February 23, 2012, Ms. Shelton did submit a Request for Occupied Conveyance to HUD's designated agent, and provided verification of her income to demonstrate her ability to pay fair market rent. She never received a response to that request.

On January 30, 2012, Wells Fargo filed an unlawful detainer action against Ms. Shelton in the Jackson County Associate Circuit Court, seeking to evict her from the premises. Ms. Shelton filed this voluntary Chapter 7 bankruptcy case on February 5, 2012, staying the unlawful detainer action. Wells Fargo filed a Motion for Relief from Stay to proceed with the eviction. Ms. Shelton opposed that motion, and filed this adversary proceeding, asserting that foreclosure was wrongful. The state court eviction action has been stayed pending resolution of this adversary proceeding.

## DISCUSSION

As stated above, Ms. Shelton's remaining causes of action assert breach of the duty of good faith and fair dealing (Count III); violation of the Missouri Merchandising Practices Act (Count IV); breach of contract (Count V); and quiet title (Count VII).

*Counts III and V—Breach of the Duty of Good Faith and Fair Dealing and Breach of Contract*

■ In Missouri, to establish a breach of contract, the party claiming breach must show: (1) the existence of an enforceable contract; (2) the presence of mutual obligations under the contract; (3) the failure to perform an obligation specified in

**12.** *Superior Ins. Co. v. Univ. Underwriters Ins. Co.,* 62 S.W.3d 110, 118 (Mo.Ct.App. S.D. 2001).

**13.** *Bishop v. Shelter Mut. Ins. Co.,* 129 S.W.3d 500, 505 (Mo.Ct.App. S.D.2004).

the contract; and (4) that the party seeking recovery was thereby damaged.[12]

■ "As a general statement, a covenant of good faith and fair dealing is present in every contract."[13] "The implied covenant of good faith prohibits [a] contracting party from acting in such a manner as to evade the spirit of the transaction or ... to deny the other party the expected benefit of the contract."[14]

■ In Count V of the Complaint, Ms. Shelton asserts that Wells Fargo breached the terms of the Deed of Trust, specifically ¶ 9(d) quoted above, by foreclosing without pursuing loss mitigation options as required by the terms of the Deed of Trust and HUD regulations. In Count III, she asserts that Wells Fargo breached the implied duty of good faith and fair dealing by:

(a) Failing to pursue the loss mitigation procedures specified by 24 C.F.R. § 203.501, required for all FHA insured loans, including, but not limited to, a loan modification, which Ms. Shelton qualified for, but was not offered;

(b) Failing to consider or respond to Ms. Shelton's request for FHA loss mitigation relief in a meaningful or timely manner;

(c) Proceeding to foreclose on Ms. Shelton's home without making a good faith or bona fide review of any of Ms. Shelton's requests for loss mitigation relief;

(d) Failing to contact Ms. Shelton to arrange a face-to-face meeting to discuss her situation, as required by 24 C.F.R. § 203.604; and

**14.** *City of St. Joseph v. Lake Contrary Sewer Dist.,* 251 S.W.3d 362, 370 (Mo.Ct.App. W.D. 2008) (citation and internal quotation marks omitted).

(e) Failing to provide timely notice to Ms. Shelton of her right to request an "occupied conveyance" of her Home, in violation of 24 CFR § 203.675.[15]

Wells Fargo asserts that both the breach of contract and breach of the duty of good faith and fair dealing claims, which are based on alleged violations of HUD regulations, must fail because the National Housing Act and the regulations promulgated thereunder pertain to relations between the mortgagee (i.e., Wells Fargo) and the government—they do not give the mortgagor (Ms. Shelton) a claim for duty owed or a remedy for the mortgagee's failure to follow those regulations.

Several courts have held that the National Housing Act and the HUD regulations do not create, either explicitly or impliedly, rights in a mortgagor.[16] Rather, the statutory scheme includes a comprehensive enforcement mechanism to police mortgagees' compliance with the loss mitigation procedures and other provisions by imposing various penalties on the mortgagee.[17] "[T]he statute and regulations focus on oversight by the Department of Housing and Urban Development, and a Mortgagee Review Board, which is vested with authority to take action against a noncompliant mortgagee."[18] Thus, neither the National Housing Act nor its regulations create a private right of action for a mortgagor.[19]

However, as Ms. Shelton points out, ¶ 9(d) of the Deed of Trust on her home provides that the Deed of Trust "does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary" and thus, she asserts, incorporates the regulations. Rather than asserting an in-

15. Ms. Shelton also argued that Wells Fargo breached the duty of good faith and fair duty by foreclosing on her home on the basis of invalidly executed Assignment of Deed of Trust and Appointment of Successor Trustee. However, as I understand her position, she has abandoned, without prejudice, her causes of action relating to the alleged improper assignment.

16. See, e.g., In re Miller, 124 Fed.Appx. 152 (4th Cir.2005).

17. Id. at 155.

18. Brake v. Wells Fargo Financial System Florida, Inc., 2011 WL 6719215, at *5 (M.D.Fla. Dec. 5, 2011) (Report and Recommendation by Magistrate Judge) (citing 24 C.F.R. 203.500 ("[f]ailure to comply [with servicing responsibilities] ... will be cause for imposition of a civil money penalty ... or withdrawal of HUD's approval of a mortgagee") and 24 C.F.R. 203.605(c) ("[a] mortgagee that is found to have failed to engage in loss mitigation as required under ... this section shall be liable for a civil monetary penalty ..." initiated by the Mortgagee Review Board)).

19. Id. See also Coley v. Accredited Home Lenders, Inc., 2011 WL 1193072, at *2 (E.D.Ark. March 29, 2011) (granting a mortgagee's motion to dismiss because the National Housing Act did not create a private right of action; rather, the Act "govern[s] relations between the mortgagee and the government, and give[s] the mortgagor no claim for duty owed or for the mortgagee's failure to follow the Act or its regulations"); City of Rohnert Park v. Harris, 601 F.2d 1040, 1047 (9th Cir.1979) ("The regulatory scheme provides for HUD oversight, not private action, to enforce agency compliance with fair price provisions."); Wells Fargo Bank, N.A. v. Favino, 2011 WL 1256771, at *12 (N.D.Ohio March 31, 2011) ("There is no private right of action for breach of HUD regulations or FHA policy. There is also no private right of action available to a mortgagor for a mortgagee's noncompliance with the National Housing Act, 12 U.S.C. § 1701."); Mitchell v. Chase Home Finance LLC, 2008 WL 623395, at *3 (N.D.Tex. March 4, 2008) ("As other courts have observed, the regulations promulgated under the National Housing Act govern relations between the mortgagee and the government, and give the mortgagor no claim for duty owed or for the mortgagees' failure to follow said regulations.").

dependent cause of action based on the alleged HUD violations, Ms. Shelton asserts that alleged violations are a breach of the Deed of Trust and the duty of good faith and fair dealing in the contract between the parties.

Ms. Shelton relies on *Mullins v. GMAC Mortgage, LLC.*[20] In that case, the borrowers filed a lawsuit against a foreclosing lender and asserted, among other things, that the lender breached the contract between them by proceeding with foreclosure without giving them the opportunity to modify as required by HUD regulations which, as here, were referenced in the deed of trust. The court in that case denied the lender's motion to dismiss because the borrowers had pointed to specific language in the deed of trust which conditioned the lender's right to accelerate payment or foreclosure on the lender's compliance with HUD regulations. Since the borrowers had pointed to at least one applicable HUD regulation which required the lender to do more before it foreclosed, the borrowers had pled their breach of contract claim with sufficient particularity. The court there distinguished the borrower's cause of action, which was based on breach of a contract between the parties, from a suit to enforce HUD regulations "under some vague and likely non-existent

cause of action allowing a member of the public to take upon himself the role of regulatory enforcer."[21] In addition, since the breach of contract claim survived, the breach of implied covenant to act in good faith likewise survived.[22]

Similarly, in *Overholt v. Wells Fargo Bank, N.A.,*[23] the court denied Wells Fargo's motion to dismiss a similar lawsuit because the plaintiffs there were not asserting a private cause of action for HUD or FHA violations, but instead were asserting a breach of contract claim for violations of these regulations which the plaintiffs asserted were incorporated into the Note and Deed of Trust. Noting that an action for breach of contract compensates for one's failure to comply with mutually agreed upon terms, the court suggested that damages for such breach might be available.[24]

In *Kersey v. PHH Mortgage Corp.,*[25] a homeowner brought an action seeking to stop a foreclosure on the ground that the lender had not complied with the HUD regulations. The court there held that the plaintiff had stated a valid breach of contract theory, since the Deed of Trust, which incorporated the HUD regulations, manifested the parties' mutual assent to a bargained-for exchange of promises, which

**20.** 2011 WL 1298777, at *2 (S.D.W.Va. March 31, 2011)

**21.** *Id.* at *3

**22.** *Id.*

**23.** 2011 WL 4862525 (E.D.Tex. Sept. 2, 2011).

**24.** *Id.* at *5 ("Thus, failure to comply with the regulations made party of the parties' agreement may give rise to liability on a contract theory because the parties incorporated the terms into their contract. Indeed, courts

have recognized that claims for failure to comply with the HUD regulations in question are best classified as a breach of contract.") (quoting *Baker v. Countrywide Home Loans, Inc.,* 2009 WL 1810336, at *5 (N.D.Tex. June 24, 2009)).

**25.** 682 F.Supp.2d 588 (E.D.Va.2010). Ms. Shelton notes that the judge in *Kersey* later vacated that decision *sua sponte* for lack of subject matter jurisdiction. *Kersey v. PHH Mortg. Corp.,* 2010 WL 3222262 (E.D.Va. Aug. 13, 2010). As discussed more fully below, I likewise have concerns about this Court's authority to enter a final order in this case.

included that the lender comply with the regulations, including the face-to-face meeting prior to commencing foreclosure.[26]

Wells Fargo cites *Wells Fargo Home Mortgage v. Neal*, in which the Maryland Supreme Court held that a breach of contract theory based on violations of HUD regulations could not be asserted by the borrower offensively as a basis for damages, but rather only as a defense to a foreclosure.[27] In this case, however, there is the additional factor that, as alleged by Ms. Shelton, the property was foreclosed without her having been given proper notice. Therefore, if correct, saying that she should have asserted these rights prior to foreclosure is not a realistic solution. In any event, there is a split of authority on the question of whether a debtor can recover damages in a suit such as this one.[28]

However, for purposes of this Motion, I find the cases suggesting that a breach of contract action might lie on a contract term incorporating the regulations to be persuasive. At this juncture, I need only decide whether Ms. Shelton has sufficient-ly pled the elements for breach of contract and breach of good faith and fair dealing. I need not decide at this point what damages she may be entitled to if she is successful in proving those elements at a later stage in the proceedings. I find, based on the foregoing, that Ms. Shelton has sufficiently pled the existence of an enforceable contract; the presence of mutual obligations under the contract; that Wells Fargo failed to perform the obligation in ¶ 9 of the Deed of Trust; and that she was damaged as a result of the foreclosure. She has also sufficiently pled that Wells Fargo evaded the spirit of the transaction and denied her the expected benefit of the HUD regulations incorporated into the contract, thus stating a basis for a breach of good faith and fair dealing. While the Eighth Circuit has held that a different Housing Act does not create a private cause of action, that case did not involve a situation like here, where a separate contract incorporated regulations under the Act.[29] Wells Fargo's Motion to Dismiss Counts III and V will, therefore, be denied.

**26.** *See also Sinclair v. Donovan*, 2011 WL 5326093, at *7 (S.D.Ohio Nov. 4, 2011) ("[I]t indeed would be an absurd result if the Lender Defendants were allowed to ignore the contract terms drafted to govern their post-default conduct on the grounds that the mortgagors have defaults. We find that the HUD–FHA regulations concerning loss mitigation are enforceable terms of the mortgage contract between the parties and that Plaintiffs cannot be denied the benefit of these provisions by virtue of the fact of simple default.").

**27.** 398 Md. 705, 922 A.2d 538, 551 (Md.2007) (holding that a paragraph in a deed of trust referring to loss mitigation regulations was not bargained for, and did not give rise to private cause of action for breach of contract damages; holding that HUD regulations may be used as a shield against unauthorized foreclosure actions, but not as a sword for damages).

**28.** *See also ABN AMRO Mortgage Group, Inc. v. Tullar*, 770 N.W.2d 851 (Iowa App.2009) (same); *Dixon v. Wells Fargo Bank, N.A.*, 2012 WL 4450502 (E.D.Mich. Sept. 25, 2012) (holding that a provision identical to ¶ 9(d) does not form the basis of a breach of contract claim, in part because Michigan has a pre-existing duty rule which provides that a breach of contract claim cannot be premised on an obligation that the defendant already had a duty under the law to perform).

**29.** *Cedar–Riverside Assocs., Inc. v. City of Minneapolis*, 606 F.2d 254 (8th Cir.1979) (discussing the Housing Act of 1949, found at 42 U.S.C. § 1441, *et seq.*, in a suit by housing project developers against the City of Minneapolis and its Housing and Redevelopment Authority stemming from their approval of a plan to reduce housing density in the area and diversion of federal funds to other housing projects).

### Count IV—Violation of the Missouri Merchandising Practices Act

Section 407.020 of the Missouri Statutes, the Missouri Merchandising Practices Act ("MMPA") prohibits the use of "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce .... in or from the state of Missouri...." [30] An act declared unlawful by § 407.020 violates that statute "whether committed before, during or after the sale, advertisement or solicitation." [31]

■■ "A private right of action is bestowed upon any consumer who 'suffers an ascertainable loss of money or property ... as a result of the use or employment by another person of a method, act or practice declared unlawful by section 407.020.'" [32] The MMPA is designed to preserve fundamental honesty, fair play and right dealings in public transactions, and serves as a supplement to the common law definition of fraud. [33] Its provision setting forth what constitutes an unlawful practice is intentionally broad so as to prevent "evasion by overly meticulous definitions." [34]

■■■ In order to prevail on a suit for damages under § 407.025, Ms. Shelton must show that (1) she purchased "merchandise"; (2) for personal, family, or household purposes; (3) that she suffered an ascertainable loss of money or property; and (4) that such loss was a result of an act declared unlawful by § 407.020, committed by Wells Fargo before, during or after the sale.

■■ "Merchandise" is defined broadly in the MMPA as "any objects, wares, goods, commodities, intangibles, real estate or services." [35] Courts in Missouri have held that "services" under the MMPA include such items as financing a retail installment contract. [36] Thus, Ms. Shelton has sufficiently pled that the financing of her home, and the sale of HUD insurance in connection with the loan, was a "sale" of "merchandise" under the MMPA. In addition, Ms. Shelton sufficiently pled that her loan was for personal, family or household purposes. In addition, the loss of her home to foreclosure could be an ascertainable loss of money or property.

As to the fourth element, Ms. Shelton asserts that Wells Fargo engaged in unfair and deceptive acts and practices in violation of the MMPA, including:

(a) Failing to provide her with the loss mitigation opportunities required by the Note and Deed of Trust, a unilateral breach of unambiguous contractual provisions, in violation of 15 CFR 60–8.070.

(b) Failing to provide her with the loss mitigation opportunities mandated

30. Mo.Rev.Stat. § 407.020.1.

31. *Id.*

32. *DePeralta v. Dlorah, Inc.,* 2012 WL 4092191, at *7 (W.D.Mo. Sept. 17, 2012) (quoting Mo.Rev.Stat. § 407.025.1).

33. *Zmuda v. Chesterfield Valley Power Sports, Inc.,* 267 S.W.3d 712, 716 (Mo.Ct.App.2008).

34. *Id.* (citation omitted).

35. Mo.Rev.Stat. § 407.010(4).

36. *See, e.g., Fielder v. Credit Acceptance Corp.,* 19 F.Supp.2d 966, 978 (W.D.Mo.1998) ("The Court is persuaded that section 407.020 does apply to 'services' such as, in this case, financing a retail installment contract."), *vacated on other grounds,* 188 F.3d 1031 (8th Cir. 1999). *See also In re McClelland,* 2008 WL 5157685, at *5 n. 7 (Bankr.W.D.Mo. June 20, 2008) (" 'Merchandise' covers 'services,' including the extension of credit.").

pursuant to federal regulations, in violation of 15 CFR 60–8.090.

(c) Adding a layer of foreclosure-related fees and costs which should not have been incurred without first providing her with the FHA pre-foreclosure loss mitigation options.

(d) Failing to provide her timely notice of her right to request an "occupied conveyance" of her home as required pursuant to 24 CFR § 203.675, in violation of 15 CFR 60–8.090.

(e) Foreclosing on her home based on an invalidly executed Assignment of Deed of Trust and Appointment of Successor Trustee.

(f) Wells Fargo's lack of good faith in the performance of its duties under the Note and Deed of Trust was in violation of 15 CFR 60–8.040(1).

(g) Wells Fargo, through its agents and attorneys, without legal authority to do so, conducted an unlawful foreclosure sale, recorded an invalid Trustee's Deed, and initiated an unlawful detainer action based upon an invalid claim of the right to possession of the home, which acts were unfair and unconscionable, and constitute unfair and deceptive acts and practices.

(h) If, in the alternative, the loan was not FHA insured, Wells Fargo's actions in collecting and attempting to collect FHA mortgage insurance premiums from Ms. Shelton was an unfair and deceptive practice.

(i) Moreover, if the loan was not FHA insured, then Wells Fargo as a recipient of funds from the U.S. Department of Treasury as part of the Troubled Asset Relief Program and the Making Home Affordable Program was required to consider Ms.

Shelton's eligibility for a loan modification pursuant to said Programs, yet Wells Fargo failed to duly consider her requests for a loan modification, which was an unfair and deceptive act or practice.

In essence, Wells Fargo asserts that the MMPA must fail because the alleged illegal acts lack sufficient connection with the original transaction. Wells Fargo cites *State ex rel. Koster v. Professional Debt Management, LLC*, which held that "actions occurring after the initial sales transaction, which do not relate to any claims or representations made before or at the time of the initial sales transaction, and which are taken by a person who is not a party to the initial sales transaction," are not made "in connection with" the sale or advertisement of merchandise as required by the MMPA.[37] However, that case is distinguishable. There, the court held that abusive debt collection by a third-party debt collector, which the court found was entirely unrelated to the initial extension of credit by the originating lender, was too remote from the original sale of merchandise to fit under the MMPA.

That is not the situation here. The agreement at issue here involves a long-term relationship between the parties (and their successors) and expressly encompasses the possibility of such events as default and the exercise of rights on default. In addition, Ms. Shelton asserts that Wells Fargo foreclosed on her home in violation of a specific provision of the Deed of Trust incorporating regulations in the event of default, which she alleges was a bargained-for term of the agreement. Finally, in order to obtain the loan through the FHA Insured Mortgage Program, Ms. Shelton was paying annual premiums for mortgage insurance on the loan. While it

**37.** 351 S.W.3d 668, 674 (Mo.Ct.App.2011).

is not entirely clear from the Complaint what those premium payments covered, she has sufficiently pled that she did not receive that benefit for which she was charged.

While I recognize the apparent disconnect between the initial transaction and later breaches of promises, the statute expressly includes acts occurring after the initial sale, and Ms. Shelton has adequately pled that the agreement between the parties in this case contemplated ongoing activities and benefits to her as part of the HUD program, and that Wells Fargo denied her those benefits. In addition, Ms. Shelton has alleged that Wells Fargo made ongoing representations to her regarding loss mitigation opportunities after the default, and then failed to follow through.

As a result, I find that, for purposes of this Motion to Dismiss, Ms. Shelton has sufficiently pled a cause of action under the MMPA. Wells Fargo's Motion to Dismiss Count IV will, therefore, be denied.

*Count VII—Quiet Title*

Missouri law provides that any person claiming title, estate, or interest in real property "may institute an action against any person or persons having or claiming to have any title, estate or interest in such property...."[38] "To state a cause of action to quiet title, a plaintiff must allege: (1) ownership in the described real estate; (2) that the defendant claims some title, estate or interest to or in said premises; and (3) said claim is adverse and prejudicial to plaintiff."[39] Ms. Shelton must plead facts showing that she has a superior title to the property at issue.[40]

Ms. Shelton asserts, in essence, that she should still be the owner of the property because it should not have been foreclosed without offering her loss mitigation opportunities. This meets the pleading requirements for a cause of action for quiet title. The Court need not decide at this early stage whether it can restore ownership to Ms. Shelton if the Court finds that the foreclosure breached the contract or violated the MMPA. Nevertheless, if the Court finds the foreclosure was wrongful, then it may well be necessary to determine the relative rights of the parties in the property. As a result, Wells Fargo's Motion to Dismiss Count VII will be denied.

### THIS COURT'S AUTHORITY

Although neither party has expressly questioned this Court's authority to enter final judgment, I, like the Court in the *Kersey* case mentioned above,[41] question whether this Court can enter final judgment, absent consent, particularly in light of *Stern v. Marshall.*[42] Consequently, the parties are directed, within 14 days from the date of this Order, to file statements regarding whether this matter is core, or whether this Court should issue proposed Findings of Fact and Conclusions of Law pursuant to 28 U.S.C. § 157(c). The parties should also state whether, in the event that the Court determines that this is not a core proceeding, they consent to entry of final judgment by the Bankruptcy Court.

ACCORDINGLY, Wells Fargo Bank, N.A.'s Motion to Dismiss is DENIED. The parties are directed, within 14 days from

---

38. Mo.Rev.Stat. § 527.150(1).

39. *Hess v. Wells Fargo Home Mortg.*, 2012 WL 872752, at *2 (E.D.Mo. March 14, 2012) (citation omitted).

40. *Id.* (citation omitted).

41. 682 F.Supp.2d 588 (E.D.Va.2010).

42. —— U.S. ——, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011).

the date of this Order, to file statements concerning this Court's entry of a final order, as discussed herein.

IT IS SO ORDERED.